UNITED STATES of America

v.

Kevin R. DAILEY.

Crim. No. 83–308–T.

United States District Court,
D. Massachusetts.

June 22, 1984.

Janis M. Berry, Sp. Atty., U.S. Dept. of Justice, Martin D. Boudreau, Asst. U.S. Atty., Chief, Criminal Narcotics Task Force, Boston, Mass., for the U.S.

Martin G. Weinberg, Oteri, Weinberg & Lawson, Boston, Mass., Gerald B. Lefcourt, New York City, for defendant Kevin R. Dailey.

OPINION

TAURO, District Judge.

Defendant Kevin Dailey, charged with eight counts of drug related offenses, seeks to suppress the testimony of three prosecution witnesses. Dailey contends that the government entered into plea agreements with the challenged witnesses containing provisions for alternative sentencing recommendations that were contingent upon the government's evaluation of the content and result of the witnesses' testimony.[1] Dailey argues that such agreements are an invitation to perjury and are, therefore, incompatible with the due process protections guaranteed by the United States Constitution.

In opposition, the government argues that the plea agreements require only that the witnesses testify truthfully. Any possible benefit to the witnesses under the agreements, according to the government, is not contingent upon the degree to which their testimony proves helpful to the underlying prosecution.

On June 12, after a hearing, the court ordered the testimony excluded. This opinion explains the reasons for that decision.

I

THE FACTS

On November 25, 1984, the grand jury returned a nine count indictment charging Kevin Dailey and fifteen others with violations arising out of their alleged involvement in conspiracies to import, and to possess with intent to distribute, large quantities of marijuana. Dailey was named as a defendant in eight of the nine counts.

Prior to the return of the indictment, the government had entered an agreement with Tommy Tindall (Exhibit A) under

---

1. The government's agreements with the witnesses Frappier and Minnig were made pursuant to Federal Rule of Criminal Procedure 11(e)(1)(A) and (C). The government's agreement with the witness Tindall was a post-sentencing "Memorandum of Agreement" which set forth the government's position concerning a stay of Tindall's thirty-six month jail sentence, and any motion for reduction of sentence that might be filed by him.

which he agreed to submit to a "complete debriefing" concerning his knowledge of the illegal drug trade. Tindall agreed to testify at any trial or grand jury proceeding in which his testimony was needed. In exchange, the government agreed to support a four month stay in the execution of a thirty-six month jail sentence that had been imposed on Tindall. Additionally, the agreement provided: "The Government does not now agree to any further extension beyond this 4-month period, but will consider such an extension *based on an evaluation of the information provided by Tommy Tindall.*" (Emphasis added.) The agreement went on to provide:

> The Government does not make any commitment with respect to any motion for reduction of sentence that might be filed by Tommy Tindall, and expressly reserves the right to oppose, make no recommendations or support such a motion, *depending on the benefit inuring to the Government as a result of information provided by Tommy Tindall.*

(Emphasis added.)

Following the return of the indictment in this case, the government entered into plea agreements with two other witnesses: Robert L. Frappier and Timothy Minnig (Exhibit B).[2] Under these agreements, which were entered pursuant to Rule 11(e)(1)(A) and (C) of the Federal Rules of Criminal Procedure, the witnesses agreed to plead guilty to certain counts of indictments issued in Maine and Oregon.

Paragraph 2 of the agreements defined the witnesses' obligations. Under paragraph 2(c) the witnesses agreed to give "complete and honest testimony at any and all proceedings" with respect to their own criminal activity and the criminal activity of others. The agreements provided for a deferment of sentencing on the Maine indictment "to allow the terms of this Agreement to be carried out."

---

**2.** The government used the same form of agreement for Frappier and Minnig. Only the agreement with Frappier is attached as an exhibit.

Paragraph 5 of the agreement defined the government's obligations. That paragraph provided, in pertinent part:

> The Defendant agrees to fully cooperate, as defined in Paragraph 2. If, at the time of sentencing on the Maine indictment, the defendant has fully cooperated with the United States, as defined in Paragraph 2, the Government will recommend a specific term of imprisonment which does not exceed twenty (20 years *and, depending principally upon the value to the Government of the defendant's cooperation, the Government, in its sole discretion, may recommend a sentence of ten (10) years* .... If at the time of sentencing on the Maine indictment, the Government presents evidence and the Court finds by a preponderance of the evidence that the defendant has not fully cooperated, as defined in Paragraph 2, then the Court shall sentence the defendant to a term of imprisonment of thirty-five (35) years.

(Emphasis added).

## II

## THE LAW

Defendant does not challenge the constitutionality of an agreement by which the government agrees to grant favors to a prosecution witness in return for truthful testimony about others. *Cf. United States v. Ortiz Oliveras*, 717 F.2d 1, 4 (1st Cir. 1983) ("We cannot say that there is no force to the argument that a plea bargain conditioned upon an agreement to testify against a former confederate may create such an incentive to commit perjury as to violate public policy."); *United States v. Librach*, 536 F.2d 1228, 1229–30 (8th Cir. 1976), *cert. denied*, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976). Rather, what is at issue is the validity of an agreement for a sentencing recommendation that is in any way contingent on the success of the government's prosecutorial effort.

---

Hereafter both agreements shall be termed the "Frappier Agreement."

Defendant's motion presents an issue of first impression in this circuit. The only other court that has considered a similar due process challenge to contingent plea agreements is the Eighth Circuit in the recent case, *United States v. Waterman*, 732 F.2d 1527 (1984). Although not binding on this court, *Waterman* presents persuasive authority in support of defendant's position.

In *Waterman* a witness, Gamst, entered an agreement with the United States Attorney to cooperate in a grand jury investigation of certain individuals. Under the *Waterman* agreement, if charges were brought against these individuals, the United States Attorney agreed to "[a]ffirmatively recommend" to the court that Gamst's sentence be reduced by a maximum of two years. If charges were not brought, the United States Attorney agreed that he would acknowledge and inform the court of Gamst's cooperation with the government, but would not specifically recommend a reduced sentence. *See id.* at 1529.

Waterman moved to vacate his sentence under 28 U.S.C. § 2255 (1971), on the ground that the agreement with Gamst violated due process.[3] The district court denied the motion. The Eighth Circuit reversed, finding:

> The government's agreement with its key witness hampered the truth-finding function of the jury to a degree which cannot be reconciled with the fair procedures guaranteed by the due process clause of the fifth amendment.

*Id.* at 1528.

The *Waterman* court saw no distinction between testimony offered before a grand jury and at a trial.

> Although the agreement in this case was contingent upon the government bringing charges against others, rather than upon successful convictions, we believe that the circumstances surrounding the agreement cast a shadow over both

Gamst's pretrial cooperation with the government and his testimony at Waterman's trial.

*Id.* at 1531. Given a tainted plea agreement, the Eighth Circuit ruled that:

> the government cannot consistent with due process offer favorable treatment to a prosecution witness contingent upon the success of the prosecution. Such an agreement is nothing more than an invitation to perjury having no place in our constitutional system of justice.

*Id.* at 1531.

### III

#### THE FRAPPIER AGREEMENT

The government argues that *Waterman* should not control here because, under paragraph 5 of the Frappier Agreement, a sentencing recommendation is conditioned only on the witnesses' obligation to "fully cooperate," as that term is defined in paragraph 2. The government's position presents a tortured interpretation of the agreement's plain language. If the witnesses' "full cooperation" were the only condition to the government's recommendation, then the Frappier Agreement's language providing for a recommendation of ten rather than twenty years, "depending principally upon the value to the Government of the defendant's cooperation," would be superfluous. The Frappier Agreement lends itself to far more realistic interpretation.

The challenged agreement gives the government three distinct recommendation options, each having a different triggering point. The government's first option is to make a recommendation of twenty years if the witnesses have "fully cooperated . . . as defined in Paragraph 2." The government's second option is to make a recommendation of ten years "depending principally upon the value to the Government of the [witnesses'] cooperation." Third, the government may make a recommendation

---

**3.** Although the jury was informed of the contingent agreements in *Waterman, see id.* at 1532, it appears from the circuit court's opinion that

Waterman did not challenge the constitutionality of the witness's agreement with the government until after his conviction.

of thirty-five years if the witnesses have not fully cooperated.

If, as the government contends, the agreements were contingent only on the witnesses' full cooperation, then there would be no reason for any provision other than the two alternative recommendations of twenty years for cooperation and thirty-five years for non-cooperation. The Frappier agreement, however, provides a third recommendation option of ten years, rather than the twenty year recommendation the witnesses would receive if they fully cooperated. To receive this ten year bonus, the witnesses must clearly do more than merely cooperate. Indeed, to earn a recommendation of ten rather than twenty years, the witnesses' cooperation must be deemed to have been of "value" to the government. We cannot tolerate the imposition of that type of subjective pressure on witnesses, whose only interest is supposed to be in telling the truth.

This court concludes that the Frappier Agreement violated defendant's due process rights in that it provided significant potential benefit to government witnesses, contingent on the success of the underlying prosecution. *See Waterman* at 1531.[4]

4. The Frappier Agreement, because it was made pursuant to Federal Rule of Criminal Procedure 11, provides an even greater incentive to commit perjury than did the agreement in *Waterman*. Under Rule 11(e)(1)(A) and (C), the court may accept or reject the plea agreement. Unlike a plea agreement that is not entered into under Rule 11(e)(1)(A) or (C), if the court accepts the agreement it is bound to follow the recommendation. A witness who enters a Rule 11 plea agreement that is contingent on the success of the underlying prosecution, is assured that the trial court will not alter the terms of the agreement. There is, therefore, an even greater incentive for the witness to alter his testimony to give the most "value" to the government.

5. Arguably, any contingency attached to Tindall's testimony is no longer enforceable. Tindall had already been sentenced at the time of the agreement. The agreement does not refer to the date of sentencing, but it does note that the government agreed to support a four month stay in the execution of the sentence. The contingency only concerned the government's recommendation with respect to motions to reduce

## IV

## THE TINDALL AGREEMENT

The Tindall Agreement suffers from the same malaise as does the Frappier Agreement discussed above. In paragraph 1, Tindall agreed to "cooperate fully" with the government. Without reference to paragraph 1 or Tindall's cooperation, the government reserves the right, in paragraph 5, to oppose or support any motion for reduction of sentence that Tindall might file. The sole test for that opposition or support is "the benefit inuring to the Government as a result of information provided by Tommy Tindall."

There is nothing opaque about the Tindall agreement. It unambiguously conditions support for a reduced sentence on the benefit to the government from information supplied by the witness. The pressure to please under such an arrangement is potentially coercive. The Tindall agreement, therefore, imposes an impermissible contingency.[5]

## CONCLUSION

For the reasons set forth above, this court determines that the challenged plea-agreements violate defendant's due process

Tindall's sentence. Under Rule 35 of the Federal Rules of Criminal Procedure the sentencing court has limited power to reduce a sentence. That rule provides, in pertinent part:

> The court may reduce a sentence within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation . . . .

Rule 35(b) Fed.R.Crim.Proc.

Even if the sentencing court no longer has power to modify Tindall's sentence, the incentive engendered by the agreement remains effective. Assuming that Tindall had testified in another forum prior to the expiration of the Rule 35(b) period, that testimony would have been tainted by the agreement. If Tindall were to alter his testimony before a subsequent proceeding, it would subject him to prosecution for perjury.

rights under the fifth amendment of the United States Constitution.[6] The testimony of the three affected witnesses, therefore, must be suppressed.[7]

An order has ISSUED.

EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CR No. 81–00003–08 P |
| ) | |
| TOMMY TINDALL, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### MEMORANDUM OF AGREEMENT

This agreement is entered into between Tommy Tindall and his counsel, Kenneth W. Curtis, and the United States Attorney's Office. The agreement is as follows:

1. Tommy Tindall agrees to cooperate fully with the Government as to his knowledge about the illegal drug trade. He will submit to a complete debriefing by Government attorneys and agents regarding his knowledge of the illegal drug trade. He will testify at any trials or Grand Juries in which his testimony is needed.

2. Any statement made by Tommy Tindall during his debriefing will not be used against him in any criminal case. However, the Government may make any derivative use of such information in prosecutions against other individuals, and may pursue any investigative leads suggested by information provided by Tommy Tindall.

3. The immunity from prosecution is limited to use immunity only. This is to say that the Government retains the option to prosecute Tommy Tindall for crimes based upon independent information gained from sources other than that provided by Tommy Tindall himself.

4. In exchange for Tommy Tindall's cooperation, the Government agrees to support a 4–month stay in the execution of his 36–month jail sentence, that is, until November 16, 1982 at 12:00 noon. The Government does not now agree to any further extension beyond this 4–month period, but will consider such an extension based on an evaluation of the information provided by Tommy Tindall.

5. The Government does not make any commitment with respect to any motion for reduction of sentence that might be filed by Tommy Tindall, and expressly reserves the right to oppose, make no recommenda-

---

6. The government alternatively argued that the agreements were ambiguous and that the ambiguity should be resolved by having the witnesses testify that they believed that the possible benefit to them from their testimony was contingent only on it being truthful. The government's argument fails for two reasons. First, this court finds the agreements to be unambiguous. Second, if the agreements were ambiguous, any testimony that the witnesses offered concerning their understanding of the agreements would be tainted by the existence of the challenged agreements. The pressure to please would be as coercive with respect to testimony in support of the agreements as it would be with respect to the underlying prosecution.

7. This court further finds that merely notifying the jury of the existence of the agreements would not cure the constitutional infirmity. "This case involves not the undisclosed possibility of bias, but the disclosed encouragement and reward of bias." *Waterman* at 1532.

tions or support such a motion, depending on the benefit inuring to the Government as a result of information provided by Tommy Tindall.

/s/ Tommy Tindall
Tommy Tindall, Defendant
/s/ Kenneth W. Curtis
Kenneth W. Curtis, Esq.
Attorney for Defendant
/s/ Richard S. Cohen
Richard S. Cohen, Esq.
United States Attorney

### EXHIBIT B

*Plea Agreement*

1. This is a Plea Agreement between the United States of America and Robert L. Frappier, hereinafter referred to as the defendant. This Agreement is made pursuant to the provisions of F.R.Crim.P. 11(e)(1)(A)and (C).

2. For purposes of this Agreement, full cooperation with the United States means that the defendant will do all of the following:

(a) he will disclose to Government agents all of his criminal activity and all that he knows or has heard about criminal activity by any and all other persons;

(b) he will provide the Government, or aid the Government in acquiring, all documents, photographs, bills, records, receipts and like material in his custody or to which he has access which will corroborate information given pursuant to Paragraph 2(a) above;

(c) he will give complete and honest testimony at any and all proceedings with respect to matters covered by Paragraph 2(a) whenever requested by the Government, but the Government will not ask the defendant to testify against his siblings, spouse or parents or against the siblings, spouse or parents of Timothy I. Minnig;

(d) he will meet with Government agents or attorneys in preparation for giving testimony pursuant to Paragraph 2(c) and will accompany them when re-quested for the purpose of locating evidence or preparing for testimony; and

(e) he will disclose, and provide all requested information with respect to, all assets in in which he has an interest and all assets in in which he has had an interest in the last fifteen (15) years, and shall voluntarily forfeit to the United States such assets or interests which were obtained either in payment for illicit drug activity or with funds or other things of value ultimately traceable to such activity. The defendant shall execute any and all such documents as are necessary to transfer forfeitable assets to the Government, including, but not limited to, any assets in which he has an interest but which are held, in part or in total, in the name of another. As used in this Agreement, "interests in assets" shall be construed broadly and shall include property and contractual rights of any kind.

It is estimated by the defendant and by Timothy I. Minnig that the value of their combined, potentially forfeitable interests in assets is $6,700,000; if this estimate is subsequently shown to have been a knowing overestimation with the intent to deceive the United States, then the defendant shall be deemed not to have fully cooperated for purposes of this Agreement. Notwithstanding any other provisions of this Agreement, should the defendant perform all that is required of him, the Government may, in its sole discretion, allow him to retain one asset which might otherwise be subject to forfeiture, but nothing in this Agreement shall in any way obligate the Government to permit the retention of any such asset.

3. The defendant will plead guilty to violating 21 U.S.C. § 848, as charged in Count I in the Indictment in *United States of America v. Robert L. Frappier*, Cr. No. 83–00020B [hereinafter, the "Maine indictment"]. Pursuant to Rule 20 of the Federal Rules of Criminal Procedure, the defendant will also plead guilty in the District of

Maine to violating 21 U.S.C. § 952(a), as charged in Count IV in the indictment in *United States v. Robert L. Frappier,* Criminal No. 81–56, returned in the District of Oregon [hereinafter, the "Oregon indictment"]. After both pleas have been accepted by the Court, the Government will move to dismiss all other outstanding charges against the defendant in the Districts of Maine, Massachusetts and Oregon. The motion to dismiss the Massachusetts charges shall be filed in that District and the motion to dismiss the Oregon charges shall be filed in the District of Maine as part of the Rule 20 proceedings referred to above.

4. The Court will sentence the defendant to a term of imprisonment of five (5) years on the Oregon indictment, with a special parole term of two (2) years to commence immediately upon the expiration of the Oregon sentence even if the defendant is still in custody, and all of the applicable provisions in paragraph 7, including but not limited to those relating to credit for time served and good time, shall apply to that sentence. In addition, the United States Attorney will use his best efforts to ensure that the defendant is not denied the opportunity to participate in institutional programs afforded to persons sentenced under 18 U.S.C. § 4205(b)(2). The Court will defer sentencing the defendant on the Maine indictment in order to allow the terms of this Agreement to be carried out. Sentencing will be scheduled on the Maine indictment only with the consent of the United States, provided that the defendant may unilaterally move for the imposition of sentence after four (4) years and eleven (11) months have elapsed from the date of the plea, and in that event, the Court shall impose sentence as soon thereafter as is reasonably practicable. The defendant hereby waives any and all rights which he may have to an earlier imposition of sentence under the Sixth Amendment to the United States Constitution, Rule 32(a) of the Federal Rules of Criminal Procedure, the Speedy Trial Act, 18 U.S.C. § 3161 et seq., and the Plan for the prompt disposition of criminal cases promulgated by the

United States District Court for the District of Maine.

5. The Defendant agrees to fully cooperate, as defined in Paragraph 2. If, at the time of sentencing on the Maine indictment, the defendant has fully cooperated with the United States, as defined in Paragraph 2, the Government will recommend a specific term of imprisonment which does not exceed twenty (20) years and, depending principally upon the value to the Government of the defendant's cooperation, the Government, in its sole discretion, may recommend a sentence of ten (10) years; the defendant may argue for a sentence less than the Government's recommendation; in any event, the Court shall impose a sentence no greater than that recommended by the Government. If, at the time of sentencing on the Maine indictment, the Government presents evidence and the Court finds by a preponderance of the evidence that the defendant has not fully cooperated, as defined in Paragraph 2, then the Court shall sentence the defendant to a term of imprisonment of thirty-five (35) years. The Court shall not sentence the defendant to pay a fine on either the Maine or Oregon indictment.

6. It is understood that this Plea Agreement resolves any and all criminal charges that have already been made or could be made by the United States against the defendant arising out of his drug smuggling activity from 1970 up to and including the date and time of the plea on the Maine indictment, except that the defendant shall be subject to prosecution for any crimes of violence personally perpetrated or directed by him. It is further understood that this agreement does not preclude prosecution for any crimes, including prosecution for perjury, false declarations or false statements, committed by the defendant after the plea on the Maine indictment.

7. The defendant will remain in custody pending sentencing on the Maine indictment. The sentence imposed on that indictment will be fully concurrent with the sentence imposed on the Oregon indictment. Both sentences will be deemed to commence to run on the date of arrest, and the

**568**

defendant will receive credit on both sentences for the entire period from the date of arrest until the date of sentencing. Subject to the applicable statutes, regulations and procedures, the Government will use available programs and means to protect the lives of the defendant and his immediate family. The United States Attorney will use his best efforts to insure the defendant such custodial conditions as will maximize the security of his person during his confinement and travel incident to the cooperation set forth in Paragraph 2 above. The United States Attorney will also use his best efforts, including intervention on the defendant's behalf, to insure that the defendant will not be deprived of any institutional programs, or the benefits which flow from such programs, including the opportunity for extra good time, nor suffer any administrative prejudices due to his deferred sentence status or his cooperation pursuant to Paragraph 2. The defendant will not be deprived of any statutory good time credits because of his deferred sentence status or cooperation and shall be given full credit for statutory good time as of the date of his arrest.

8. This document constitutes the sole agreement between the Government and the defendant with respect to all matters arising out of, or pertaining to, the defendant's illicit drug activities. Should any provision of this agreement relating to credit for time served, good time or institutional programs be contrary to statute, rule or regulation, that provision shall be deemed void, and the agreement shall remain in force.

/s/ Richard S. Cohen
Richard S. Cohen
United States Attorney

Dated: 3/30/84

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I willingly and voluntarily agree to it.

/s/ Robert L. Frappier
Robert L. Frappier

Dated: 3/30/84

I represent Robert L. Frappier as his legal counsel. I have carefully reviewed every part of this agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

Williams and Connolly
By /s/ David Povich
David Povich, Esq.

Dated: 3/30/84