## UNITED STATES of America

v.

## Edward Patrick KENNEY, et al.

## Crim. No. 84–00007–01–P.

United States District Court,
D. Maine.

Dec. 5, 1984.

---

Richard S. Cohen, U.S. Atty., Joseph H. Groff, III, Asst. U.S. Atty., Portland, Me., for plaintiff.

Daniel G. Lilley, Portland, Me., for defendants.

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION *IN LIMINE* FOR EXCLUSION OF TESTIMONY OF COOPERATING WITNESS ON DUE PROCESS GROUNDS

GENE CARTER, District Judge.

On November 29, 1984, the Defendant Edward P. Kenney filed a Motion *in Limine* for Exclusion of Testimony of Cooperating Witness on Due Process Grounds. The motion seeks an order of this Court to "exclude all testimony of James Gregory Anderson, which the prosecution in the above-captioned case may seek to offer or use against the Defendant Kenney." The grounds alleged in support of this claim are the following:

1. The agreement between the Government and James Gregory Anderson constitutes an invitation to perjury to an extent irreparable by cross-examination;

2. Said agreement violates the spirit, if not the letter, of 18 U.S.C. § 201, which proscribes bribery of witnesses;

3. Said agreement renders the testimony of the said James Gregory Anderson violative of the due process to which Defendant is entitled, and undermines the integrity of the judicial system;

4. Said agreement is inconsistent with the Fifth Amendment of the Constitution and the due process protections guaranteed to the accused by the United States Constitution.

Thus is sought to be generated an issue of the content of due process, which has recently been adjudicated, in a very short space of time, to a stage of at least modest confusion. The seeds to that confusion were sown with the case of *United States v. Waterman,* 732 F.2d 1527 (8th Cir.1984). In the initial opinion, a three-judge panel of the Court of Appeals of the Eighth Circuit, the Court held:

> the government's agreement with its key witness hampered the truth-finding function of the jury to a degree which cannot be reconciled with the fair procedures guaranteed by the due process clause of the Fifth Amendment. Because the testimony given pursuant to this agreement was critical to support Waterman's conviction, we reverse the district court's denial of his Section 2255 motion.

*Id.* at 1528. The Court defined the issue generated in that case to be "whether an agreement to procure testimony about accomplished facts, *which places a premium on testimony adverse to a defendant,* creates a risk of perjury so great that even the jury's full knowledge of the agreement is insufficient to protect the fundamental fairness inherent in the due process clause." *Id.* at 1530 (emphasis added). In deciding that issue, the Court found that

the agreements involved in that case did place a premium on the production by the cooperating witness of testimony adverse to a defendant. The Court stated "the government cannot consistent with due process offer favorable treatment to a prosecution witness contingent upon the success of the prosecution. Such an agreement is nothing more than an invitation to perjury having no place in our constitutional system of justice." *Id.* at 1531. Finding that the invitation to perjury was not sufficiently guarded against even by disclosure of the content of the agreement to the jury in the course of the trial process, the Court found that the agreement constituted an impermissible reward to the cooperating witness based upon the results of his testimony. *Id.* at 1533.

Thereafter, the same general issue was confronted by the District Court for Massachusetts in the matter of *United States v. Dailey,* 589 F.Supp. 561 (D.Mass.1984).[1] In that case, the Court framed the issue in the following terms: "what is at issue is the validity of an agreement for a sentencing recommendation *that is in any way contingent on the success of the government's prosecutorial effort." Id.* at 562 (emphasis added). Noting that the panel decision in the *Waterman* case was not binding authority in the District of Massachusetts, the Court concluded that the panel decision "presents persuasive authority in support of defendant's position." *Id.* at 563.

Beginning its analysis of the law, the District Court implicitly acknowledged that "an agreement by which the government agrees to grant favors to a prosecution witness in return for truthful testimony about others" is not subject to challenge as violative of due process. *Id.* at 562. The panel in *Waterman* indulged precisely the same recognition in its approach to its legal analysis of the issue. *Waterman,* 732 F.2d at 1531. Indeed, the Court of Appeals for

the First Circuit, in a decision issued five days after that of the District Court in *Dailey, supra,* made it clear that the law in this circuit continues to be that the credibility of an informer, just as of any other witness, is to be tested for purposes of admissibility, even in the constitutional sense, by cross-examination and determined by a properly instructed jury. *United States v. Tapia,* 738 F.2d 18, 20 (1st Cir.1984). *Cf. Hoffa v. United States,* 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374 (1966) ("The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury.").

The District Court in *Dailey,* proceeding to an analysis of the content and meaning of the agreements involved in that case, found the agreement to give

the government three distinct recommendation options, each having a different triggering point. The government's first option is to make a recommendation of twenty years if the witnesses have "fully cooperated ... as defined in Paragraph 2." The government's second option is to make a recommendation of ten years "depending principally upon the value to the Government of the [witnesses'] cooperation." Third, the government may make a recommendation of thirty-five years if the witnesses have not fully cooperated.

*Dailey,* 589 F.Supp. at 563–64. The Court found the provision for a ten-year "bonus" to be an incentive to the Government's cooperating witness to fabricate testimony, which violated due process of law. The Court stated:

To receive this ten year bonus, the witnesses must clearly do more than merely cooperate. Indeed, to earn a recommendation of ten rather than twenty years,

---

**1.** It is to be noted that the *holding* in the panel decision in *Waterman* appears to be somewhat more broad than the *holding* of *Dailey,* since it proscribes not only contingency agreements as to sentencing recommendations (the limit of the Court's holding in *Dailey* ) but any witness agreement that affords the witness "favorable treatment" *of any type* that is contingent for its realization upon the success of a prosecution.

the witnesses' cooperation must be deemed to have been of "value" to the government. We cannot tolerate the imposition of that type of subjective pressure on witnesses, whose only interest is supposed to be in telling the truth.

*Id.* at 564. Accordingly, the Court, in an opinion filed on June 22, 1984, suppressed the testimony of the three witnesses who were the subjects of the agreements in question. This Court is informed the District Court's decision in *Dailey* is presently pending on appeal before the Court of Appeals for the First Circuit.

The *Waterman* case, *supra*, was reargued before the Eighth Circuit Court of Appeals sitting *en banc*, which filed an order on September 20, 1984, indicating the *en banc* Court to be deadlocked on the issue. The prior decision of the panel of the Circuit was vacated and the judgment of the District Court was affirmed by an equally divided Court. *Waterman*, 732 F.2d at 1533. The case, as noted in *Dailey*, *supra*, would not be a binding precedent for this Court since it is from another circuit. Furthermore, it now appears that any persuasive effect given to the panel decision in *Waterman* by the District Court of Massachusetts in deciding *Dailey* has been significantly diminished by the subsequent action of the *en banc* Court.

The issue sought to be generated by the Defendants' motion is, therefore, ensnared in a welter of decisional confusion. Whatever may be the ultimate decision as to the merits of the legal proposition that due process at some point vitiates, as a matter of public policy, cooperating witness agreements which provide *too great* an incentive to the witness to fabricate testimony,[2] it is not necessary for this Court to enter that ideological fray in order to decide the pending motion. This is so because even if the

principle underlying the *Waterman* and *Dailey* cases be correct, this agreement does not fall victim to the principle. The agreement here involved is clearly distinguishable in its content and potential effect from the agreements involved in those cases. The panel decision in *Waterman* is premised upon a factual conclusion that the witness agreement placed a premium on the witness giving testimony adverse to a defendant. *Waterman*, 732 F.2d at 1530. In *Dailey*, the similar premise is the Court's factual finding that the intent of the agreements was that the most beneficial sentencing recommendation to be obtained by the witness under them was contingent upon the success of the Government's prosecutorial effort. *Dailey*, 589 F.Supp. at 562.

The Court is convinced, after a careful study of the agreement between the Government and the witness Anderson, that the agreement cannot, by any reasonable reading, be found to suffer from any defect of the type determined to exist in the *Waterman* and *Dailey* cases.

The Government's plea bargain agreement with Anderson, which is attached hereto in its entirety as Appendix "A",[3] contains neither the specific language nor the analytical structure of the agreements at issue in *Waterman* and *Dailey*. As originally written, the agreement first recites the history of the events which led to the making of the agreement. Appendix "A," ¶¶ 1–7. It then defines, in a critical paragraph, the obligations under the agreement of the witness, Anderson, in the following language:

> James Gregory Anderson agrees to cooperate with law enforcement officials by: (1) providing complete and truthful information about both his and others, viola-

---

2. *Cf., United States v. Ortiz Oliveras,* 717 F.2d 1, 4 (1st Cir.1983) ("We cannot say there is no force to the argument that a plea bargain conditioned upon an agreement to testify against a former confederate may create such an incentive to commit perjury as to violate public policy.").

3. The plea bargain in this case consists of an original written agreement between the Government and Anderson, which was dated December 1, 1983. The agreement was subsequently amended by a written "Modification To The Agreement," which appears to have been executed on January 26, 1984, by Anderson, his then court-appointed attorney, and the United States Attorney.

tions of the laws with regard to controlled substances; (2) actively assisting law enforcement officials in procuring the arrest and subsequent conviction of his associates and his source of cocaine; (3) agreeing to truthfully testify before the grand jury or at trial concerning his knowledge of the activities of others involving controlled substances.

*Id.*, ¶ 8. The agreement then specifies that "[i]n return" for Anderson's performance under the agreement, in accordance with the obligations imposed upon him by paragraph 8 thereof, the Government will take several actions with respect to his future treatment:

(1) To allow Anderson to plead guilty to a one count information charging him with a felony offense of possession with intent to distribute a substantial amount of cocaine, which prosecution is to be the only one against him for his cocaine dealings prior to November 30, 1983, *id.*, at ¶¶ 9 and 13;

(2) To inform the Court at the time of Anderson's sentencing "of all cooperation that James Gregory Anderson has provided to the United States," *id.*, at ¶ 10;

(3) To recommend at the time of sentencing that if Anderson is to be incarcerated, such incarceration be at a facility that can provide medical assistance to him, *id.*, at ¶ 11.

The agreement specifically states that there is no agreement as to what will be an appropriate sentence to be imposed on Anderson and that "no promises regarding terms of imprisonment have been made to James Gregory Anderson by the United States Attorney." *Id.*, at ¶ 12. It contains an integration clause with respect to all promises made to Anderson by the Government. *Id.*, at ¶¶ 15–16.

By the amendment of January 26, 1984, to the original agreement, Anderson implements the option given him by paragraphs 9 and 13 of the original agreement to plead guilty to a one-count information as specified in those paragraphs. *Id.*, Modification, at ¶ 1. The Government then agrees to undertake the following additional obligations to Anderson:

(4) To place certain monies seized from Anderson's safe deposit box at the Casco Northern Bank in a trust fund to pay the expenses of Anderson's medical treatment participation in a drug rehabilitation program, and to achieve reimbursement to the Court for his attorney's fees and to the United States for certain expenses incurred on Anderson's behalf, *id.*, at ¶ 2(a);

(5) To see that after entry of the guilty plea that Anderson is released on a $10,000 personal recognizance bond on condition that he attend a drug rehabilitation program, *id.*, at ¶ 2(b);

(6) To recommend to the Court at sentencing that an extensive period of incarceration "is not appropriate based on the facts and circumstances of this case," *id.*, at ¶ 2(c); and

(7) Not to oppose the filing by Anderson of a Rule 35 motion for reduction of sentence and "to make known to the Court at that time the full extent of all cooperation of James Gregory Anderson," *id.*, at ¶ 2(d).

The Modification concludes with an integration provision. *Id.*, at ¶ 3.

It is clear from the language of the agreement that all of the Government's commitments to Anderson thereunder are contingent *upon his performance of the obligations undertaken by him with respect to the Government in paragraph 8 of the agreement.* The three affirmative obligations undertaken by the Government in the original agreement are all expressly made dependent upon Anderson's completion of the paragraph 8 obligations; paragraph 9 states explicitly that the Government will allow Anderson to plead guilty to a single-count information absolving him from further prosecution for his drug dealings prior to November 30, 1983, "in return" for Anderson's commitments made in his paragraph 8 and, as ancillary to that plea opportunity, the Government "further agrees" to inform the Court at sentencing

of his cooperation and to recommend incarceration at a facility where medical treatment will be available to him.

The four additional undertakings of the Government under the Modification Agreement of January 26, 1984, are clearly in consideration of Anderson's implementation of the plea option granted him by paragraphs 9 and 13 of the original agreement. Therefore, it is clear from both the language and the structure of the agreements, read together, that everything which the Government has agreed to do for Anderson under the agreement is contingent upon his satisfactory performance of his obligations under paragraph 8. Indeed, the Modification Agreement specifically states that the only commitment of the Government under the agreement to make any recommendation in respect to the length of sentence is "contingent on James Gregory Anderson's full and complete compliance with the December 1, 1983, agreement as modified by this agreement." Appendix "A," Modification, at ¶ 2(c). The only provision of the original agreement placing obligations upon Anderson is paragraph 8. Hence, the contingency expressed in paragraph 2(c) of the Modification Agreement can only be the performance of Anderson's undertakings under paragraph 8 of the original agreement.

Thus, the pivotal question becomes whether the effect of paragraph 8, in defining the obligations undertaken by Anderson, is to place any premium on the witness giving testimony adverse to a defendant, *Waterman,* 732 F.2d at 1530, or to make the realization of the potential benefits under the agreement contingent upon the success of the Government's prosecutorial efforts, *Dailey,* 589 F.Supp. at 562.

Paragraph 8 imposes three obligations upon Anderson: first, to provide complete *and truthful* information about legal violations by himself and others, Appendix "A," at ¶ 8(1); second, to *assist* the Government *in procuring the arrest and subsequent conviction* of his associates and his source of cocaine, *id.,* at ¶ 8(2); and, finally, "agreeing to *truthfully* testify before the

grand jury or at trial concerning his knowledge of the activities of others," *id.,* at ¶ 8(3). The first and third commitments defined are those usually exacted from any cooperating Government witness, namely, to give the Government *truthful* information and to testify *truthfully* in legal proceedings. Insofar as these provisions go, there is no constitutional defect. *United States v. Librach,* 536 F.2d 1228, 1229–30 (8th Cir.1976) *cert. denied,* 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976); *Waterman,* 732 F.2d at 1531; *Dailey,* 589 F.Supp. at 562.

Defendant specifically points to the second obligation imposed upon Anderson by clause (2) of paragraph 8. This the Defendant reads to require that Anderson take action *to procure* "the arrest and subsequent conviction of his associates and his source of cocaine." Since Anderson's obligation is to procure a conviction, argues the Defendant, his efforts must be successful in accomplishing that goal. Since the Government's obligation to provide him the benefits specified in the agreement is contingent upon his performing that obligation, among others, the risk is created, so the argument goes, that he will fabricate testimony necessary to secure a conviction.

The second clause is admittedly ineptly drafted. Nevertheless, the Defendant's construction of clause (2) overlooks that the active verb in the clause is "assisting"; hence, the clause requires Anderson only to assist the Government, not *to procure* any arrest and conviction. The procuring of a conviction is the legitimate function of the prosecutor. All that Anderson is, by the clause, to do is to assist the Government in the Government's effort to procure an arrest and conviction.

Thus, the determining factor here is the nature of the assistance that Anderson and the Government contemplate that he is to be required to provide. Clause (3) makes it clear that whatever he is to do, he is to give *truthful* testimony before the grand jury and at trial. This provision effectively removes any incentive on the part of Anderson to fabricate testimony. But fur-

ther, the requirement of clause (1), that Anderson give the Government truthful information, and that of clause (3), that he testify truthfully in court proceedings, make it clear beyond any doubt that the Government did not intend him to do any improper act or engage in any improper conduct in performing his obligations under paragraph (8). It is clear that what the Government expected was that his information would be accurate as he supplied it to Government agents and that any testimony he gave in court proceedings would be truthful. The Court finds that Anderson could not have understood anything else to have been expected from him from the content of these agreements. It cannot be said that the paragraph, read as a whole, creates a clear incentive for Anderson to fabricate testimony in order to ensure the success of any prosecutions or *this* prosecution in particular.

The Court concludes that clause (2) was intended to relate to a wholly different consideration. Anderson was required by the agreements to perform a role that was additional to that of the usual cooperating Government witness, that is, to provide truthful information about events past, and, when called upon, to give truthful testimony in court proceedings about those events. His additional role was to be to actively assist Government agents in an ongoing illicit drug conspiracy investigation. He was to take an active part in that investigation by holding meetings and telephone conversations with the other suspects while wired so that conversations with them were recorded as evidence. He was to, and did· in fact,[4] undertake, under Government supervision, to make drug buys as part of the investigation and assist Government agents in tracking the movements of those participating in such buys. It is this role of active participation in the ongoing investigation that is meant to be addressed by clause (2). Better and more artful drafting would have framed a clause that obligated Anderson in some such terms as "to actively assist law enforcement officers in investigating alleged offenses of his associates and his drug source." The Court is fully satisfied that such activity is all that clause (2) is intended to require of him.

With clause (2) so construed, it being the only contingency upon which the benefits specified by the agreement depended, the agreement cannot be said to encourage Anderson to give false testimony by placing a premium on such testimony as to make his benefits under the agreement contingent upon the success of any prosecution instituted by the Government.

Accordingly, it is ORDERED that the motion be, and is hereby, DENIED.

So ORDERED.

## APPENDIX A

### AGREEMENT BETWEEN JAMES GREGORY ANDERSON AND THE UNITED STATES OF AMERICA

1. On November 30, 1983 James Gregory Anderson voluntarily consented to a search by law enforcement officials at the Portland Jetport.

2. The search failed to discover any illicit drugs. At the time, James Gregory Anderson was fully advised of his *Miranda* rights, including the right to have a lawyer, and after acknowledging he understood his rights, voluntarily agreed to make a statement and answer questions posed by law enforcement officials.

3. James Gregory Anderson understands and agrees that all statements made to law enforcement officials on November 30, 1983 were voluntarily given and can be used against him at any subsequent criminal proceeding.

4. On December 1, 1983, James Gregory Anderson voluntarily met with law enforcement officials and a representative of

---

**4.** The Court has previously heard the testimony of the Government witness Anderson in the case of *United States v. Field,* D.Me., Crim. No. 84– 00008–P, tried in May 1984, and in which the Defendant Kenney was also a codefendant.

the United States Attorneys Office for the District of Maine.

5. At this meeting, James Gregory Anderson was specifically informed that (1) anything he said could and would be used against him; (2) that he was not under arrest and free to leave at any time; (3) that he was entitled tu have a lawyer and if he could not pay for a lawyer that the Court would appoint a lawyer; and (4) that he specifically had the right to remain silent and/or leave the voluntary meeting at any time he wished and James Gregory Anderson affirmatively stated he understood these rights and voluntarily waived them.

6. At this meeting James Gregory Anderson was specifically advised he was a target of a federal investigation involving possession of cocaine with the intent to distribute, and conspiracy to possess cocaine with the intent to distribute. Anderson voluntarily elected to make statements on December 1, 1983 to law enforcement officials and a representative of the United States Attorneys Office.

7. James Gregory Anderson voluntarily provided to law enforcement officials and the representative of the United States Attorneys Office information about his participation and the participation of others concerning violations of criminal laws involving controlled substances.

8. James Gregory Anderson agrees to cooperate with law enforcement officials by: (1) providing complete and truthful information about both his and others, violations of the laws with regard to controlled substances; (2) actively assisting law enforcement officials in procuring the arrest and subsequent conviction of his associates and his source of cocaine; (3) agreeing to truthfully testify before the grand jury or at trial concerning his knowledge of the activities of others involving controlled substances.

9. In return the United States Attorney for the District of Maine agrees to allow James Gregory Anderson to plead guilty to a one count information charging him with possession with the intent to distribute a substantial amount of cocaine relative to his cocaine dealings prior to November 30, 1983. James Gregory Anderson understands that such a charge is a felony and carries a maximum term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both.

10. The United States Attorney for the District of Maine further agrees on behalf of the United States that at the time of sentencing on such charge to inform the Court of all cooperation that James Gregory Anderson has provided to the United States.

11. The United States Attorney for the District of Maine further agrees on behalf of the United States that at the time of sentencing to recommend to the Court that if Mr. Anderson is incarcerated it be at a place that can provide medical assistance.

12. James Gregory Anderson understands that there is no agreement as to what would be the appropriate sentence in this case and no promises regarding a specific term of imprisonment have been made to James Gregory Anderson by the United States Attorney.

13. The United States Attorney agrees on behalf of the United States that if James Gregory Anderson waives indictment and pleads guilty to the charge set forth in paragraph 9 and fully cooperates with the United States as set forth in paragraph 8 of this Agreement that the United States Attorney for the District of Maine will not attempt to prosecute James Gregory Anderson for other criminal violations of Title 21 occurring within the District of Maine involving possession and/or distribution of controlled substances committed prior to the execution of this agreement.

14. James Gregory Anderson has been advised and understands that nothing in this agreement precludes the United States from attempting to seize the assets of James Gregory Anderson pursuant to the drug forfeiture statutes.

15. James Gregory Anderson understands and agrees that there have been no promises made to him that are binding

upon the Government except those promises contained in writing in this agreement.

16. This written agreement recites the complete agreement between the United States and James Gregory Anderson and cannot be modified except by the written consent of both parties.

I, James Gregory Anderson, being of sound mind and body, have carefully reviewed the above agreement. I understand that I am entering into this agreement voluntarily. I understand that I have the right to an attorney of my choosing to review this agreement and advise me, or alternatively, if I cannot afford an attorney, I am aware the Court would appoint an attorney for me. I also again state I have been completely warned of my rights against self-incrimination and affirmatively waive those rights. Any election by me to sign this agreement without an attorney reviewing it has been done knowingly, intentionally and voluntarily and has been done because I understand this agreement to my satisfaction.

/s/ James Gregory Anderson
James Gregory Anderson

Subscribed and sworn to before me this 1st day of December, 1983.

/s/ Melody A. Richardson
Notary Public
My Commission Expires
October 27, 1985

For the United States
/s/ Richard S. Cohen
Richard S. Cohen
United States Attorney
/s/ Joseph H. Groff III
Assistant U.S. Attorney
Date 12/1/83

MODIFICATION TO THE AGREEMENT BETWEEN JAMES GREGORY ANDERSON AND THE UNITED STATES OF AMERICA DATED DECEMBER 1, 1983

Pursuant to paragraph 16 of the agreement between the United States and James Gregory Anderson, the United States by and through its attorneys Richard S. Cohen, United States Attorney for the District of Maine, and Joseph H. Groff III, Assistant United States Attorney, and James Gregory Anderson by and through his attorney, Wayne R. Douglas, modify the agreement as follows:

1. James Gregory Anderson agrees to waive indictment and plea guilty to a one count information alleging that he violated Title 21, United States Code, § 841(a)(1) in that on or about October, 1983 through December, 1983 he knowingly possessed with the intent to distribute a substantial quantity of cocaine.

2. The United States agrees as follows:

(a) that all money obtained via the execution of a search warrant on safe deposit box 2748 located at Casco Northern Bank, Portland, Maine and rented by James Gregory Anderson be returned to James Gregory Anderson's attorney, Wayne R. Douglas, for the purpose of setting up a trust fund to pay for medical and personal expenses to be incurred by the defendant James Gregory Anderson, including but not limited to payment for a drug rehabilitation program, medical expenses, reimbursement to the court for attorney's fees, reimbursement to the United States for expenses incurred on behalf of James Gregory Anderson and consented to by his attorney, Wayne R. Douglas, between the entry of a plea of guilty and the commencement of his period of incarceration, if any;

(b) that the defendant James Gregory Anderson, after entry of a plea of guilty, be released on a personal recognizance bond of $10,000 conditional on James Gregory Anderson voluntarily entering and continuing to completion a drug rehabilitation program approved by the United States Attorney's office;

(c) that contingent on James Gregory Anderson's full and complete compliance with the December 1, 1983 agreement as modified by this agreement the United States at sentencing will indicate to the Court that it is the non-binding recommendation of the United States Attorney's of-

fice that an extensive period of incarceration is not appropriate based on the facts and circumstances of this case; and

(d) that the United States agrees not to oppose the filing of a motion pursuant to Rule 35 by James Gregory Anderson, if deemed appropriate by his counsel, and agrees to make known to the Court at that time the full extent of all cooperation of James Gregory Anderson.

3. The Agreement between James Gregory Anderson and the United States dated December 1, 1983, as modified by this Modification to the Agreement between James Gregory Anderson and the United States recites the complete agreement between the United States and James Gregory Anderson and cannot be modified except by written consent of both parties.

I, James Gregory Anderson, have carefully reviewed every part of the Agreement between James Gregory Anderson and the United States dated December 1, 1983 and the modifications to this agreement set forth above with my attorney. I understand and agree to the conditions set forth in the Agreement between James Gregory Anderson and the United States dated December 1, 1983 as modified by the modifications set forth above.

/s/ James Gregory Anderson
James Gregory Anderson

Dated 1/26/84

I represent James Gregory Anderson as his legal counsel in this case. I have carefully reviewed and discussed the Agreement between James Gregory Anderson and the United States dated December 1, 1983 and the modifications to this agreement set forth above. To the best of my knowledge, James Gregory Anderson understands the agreement as modified by the modifications listed above and agrees to all terms stated in the agreement as modified.

/s/ Wayne R. Douglas
Wayne R. Douglas

Dated 1/26/84

Agreed to by the United States.

Richard S. Cohen
United States Attorney
/s/ Joseph H. Groff III
Joseph H. Groff III
Assistant U.S. Attorney