STATE of Missouri,
Plaintiff-Respondent,

v.

Ronald Q. HARPER,
Defendant-Appellant.

No. 49995.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 24, 1986.

Mary E. Dockery, Asst. Public Defender, Clayton, for defendant-appellant.

Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Ronald Q. Harper appeals from a conviction by a jury in St. Louis County Circuit Court of two counts of capital murder, in violation of § 565.001 RSMo 1978 (now repealed). He was sentenced to two consecutive terms of 50 years without probation or parole.

Defendant raises three points on appeal: (1) the trial court erred in overruling defendant's motions to prevent the trial court from excusing a prospective juror who was

opposed to the death penalty; (2) the trial court erred in overruling defendant's motion to strike the testimony of a prosecution witness, also an accomplice, because the witness was offered a lesser punishment in exchange for his testimony; and (3) the trial court erred in overruling defendant's motion to suppress the pre-trial identification testimony of a witness as unreliable. We affirm.

On the evening of August 11, 1983, George "Bobo" Washington, Eddie Lawrence and the defendant went to the apartment of Preston Moore intending to rob him at gunpoint of money and drugs. The trio drove in Lawrence's car to Moore's apartment in Northland Village. Upon arrival at the apartment, Lawrence and the defendant retrieved guns from the car and went into Moore's apartment while Washington waited in the car. In addition to Moore, Angela Nick, a female friend of Moore, and Lisa Nick, 15 year old sister of Angela, were present in the apartment. Washington determined that Lawrence and the defendant were gone too long, so he entered the apartment. On the way into the apartment, Washington heard screaming by a female voice. He observed Lawrence by the stereo system and two people lying on the floor. Washington then saw the defendant emerge from a back bedroom. Lawrence advised the defendant the victims knew Washington. The defendant said they had to be "knocked" and fired a shot at the two lying on the floor. Washington testified that three or four shots were fired but he only saw the defendant shoot once and did not know who fired the other shots.

Angela Nick identified the defendant as one of three men who entered the apartment that evening. She testified that the defendant pistol-whipped her, participated in the robbery and took her sister, Lisa,

into one of the back bedrooms where shots were fired. Lisa Nick's body was later found in the back bedroom.

Medical and forensic evidence established that the bullets causing the fatal wounds to the bodies of Preston Moore and Lisa Nick were fired from the same gun. Preston Moore received a gunshot wound to the left forearm and a second wound to the skull. The bullet passed through the brain. Lisa Nick was wounded behind her right ear. The bullet passed through her skull and brain. Lisa Nick was also shot in the hand. Angela Nick received wounds to her finger, to her right arm, and three fleshwounds to her left side.

After the trio left, Angela saw that Preston and Lisa were dead. She called the police. Angela later identified the defendant at a photographic display by the police.

Henry Buford, Preston Moore's roommate, arrived home shortly after this incident. He saw that Preston and Angela had been shot and ran outside. Once outside, he saw a friend, Mark Johnson, and told him to call the police. Johnson gave Buford a description of a car he had seen and the direction it was headed. Buford pursued the car and wrote down the license number. Buford later identified Eddie Lawrence as the driver of that car. Buford observed two other men in the car, but he could not identify them.

Terry Parker, another resident of the area, and Mark Johnson testified and gave descriptions of the car and the clothing worn by the trio. Parker identified Lawrence. Johnson identified both Lawrence and the defendant.

■ Defendant first contends the trial court erred in overruling his motions to prevent the trial court from excusing a prospective juror who was opposed to the death penalty.[1] Specifically, the defendant

---

1. During voir dire examination the trial court removed for cause, Venireman No. 50, Robert C. Patton, from the jury panel. The examination of Mr. Patton is set forth below:

THE COURT: Yes, sir; Mr. Patton. Can you tell us what your reasons are for making the statement that you could not—

PANELIST: Okay. The reasons are religous, [sic] and I just believe that I cannot pass a sentence of death, or anything else, against another person; unless, you know, in self-defense or anything like that.

It's just not—would not sit right with my conscience.

alleges the trial court's failure to qualify additional jurors[2] coupled with its action of striking Venireman Patton for cause denied defendant a jury selected from a fair cross-section of the community; and produced a jury biased in favor of conviction.

 Missouri courts have repeatedly rejected defendant's theory that exclusion for cause of veniremen who are unable to consider imposing the death penalty regardless of the evidence is unconstitutional. *State v. Boliek*, 706 S.W.2d 847, 849[1] (Mo. banc 1986); *State v. Malone*, 694 S.W.2d 723, 726–727[2] (Mo. banc 1985); *State v. Nave*, 694 S.W.2d 729, 735–736[6] (Mo. banc 1985); *State v. Bannister*, 680 S.W.2d 141, 146[12] (Mo. banc 1984); *State v. Preston*, 673 S.W.2d 1, 8–9[19] (Mo. banc 1984), *cert. denied*, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984). Defendant requests this court now reconsider these issues on the basis of *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir. en banc 1985), *cert. granted sub. nom., Lockhart v. McCree*, ── U.S. ──, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985). Most recently, the U.S. Supreme Court announced its decision of *Lockhart v. McCree*, ── U.S. ──, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) in which the court rejected the argument that a "death qualified" jury was not impartial. The Sixth Amendment, the court said, does not demand any particular mix of jurors or "balancing" of the predispositions of individual jurors. The removal of jurors who are irrevocably opposed to capital punishment serves the state's proper interest in obtaining a jury that can impartially decide all the issues at both phases of the trial. This opinion is consistent with the holding of the Missouri Supreme Court in *State v. Nave*, supra. The court stated, "We are not bound by the majority view expressed in *Grigsby*, and we decline to follow it here for several reasons." *Id.* at 736. The court then detailed several reasons for refusing to follow *Grigsby*. Among them were previous rejection of the same argument by the Missouri Supreme Court; and the *Grigsby* holding was contra to the overwhelming weight of federal and state authority, with the latest Supreme Court of the United States opinions contrary to *Grigsby*.[3] *Id* at 736. It is therefore clear, that it is not an error to strike a venireman for cause who is unable to consider the death penalty regardless of the evidence. With regard to the defendant's motion that additional alternate jurors be qualified for the penalty phase of the trial, the point is moot because the death penalty was not imposed. See e.s. *State v. Richter*, 647

THE COURT: All right. Mr. McCulloch?

MR. McCULLOCH: Let me just ask you one question.

PANELIST: Sure.

MR. McCULLOCH: Later in the case, if you were on this jury, the Judge will give certain instructions. One of the instructions is on the Capital Murder; would be if the jury found him guilty of Capital Murder, another instruction will by, [sic] you're now to assess the punishment, and the punishment you will assess will be either death or it will be life without parole.

Would you be able to follow that instruction and consider the death penalty as a possible form of punishment?

PANELIST: No.

MR. McCULLOCH: Okay.

THE COURT: Mr. Maurer?

MR. MAURER: Do you understand that the question is—you're being asked to make kind of a distinction that some people got confused.

You can serve on the jury if you're basically against the death penalty as a political or religous [sic] thing. I mean, if you feel that you just have an attitude against the death penalty, and you don't approve of it, that's okay. It's okay.

If that attitude is so strong that you feel you couldn't follow the Court's instructions and consider the punishment, that's included in the law. Just—when you look at it that way, do you think that even if you're opposed to captain [sic] punishment in general, do you think you could consider it if you were instructed by the Court to?

PANELIST: Not really; no, it's just something I can't do.

THE COURT: Okay, Mr. Patton, you'll be excused as a juror, okay?

PANELIST: Okay; all right.

2. Prior to the trial, defendant requested that additional alternate jurors be qualified for the second, penalty phase, of the trial. The trial court overruled defendant's request.

3. *Lockhart v. McCree*, ── U.S. ──, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

S.W.2d 513, 517[1] (Mo. banc 1983). We rule this point against defendant.

In his second point, defendant contends the trial court erred in overruling his moton to strike the testimony of a prosecution witness, George "Bobo" Washington. Washington had been promised less punishment in exchange for his testimony. Washington was an accomplice of the defendant. In return for his testimony, the prosecution dropped capital murder charges against Washington. Washington was permitted to enter pleas of guilt to robbery and armed criminal action charges wherein the prosecutor promised to recommend a total of twenty years imprisonment. Sentencing of Washington was postponed as the plea bargain was contingent upon his testimony at defendant's trial. The defendant suggests that Washington's testimony was, therefore, unreliable and untrustworthy.

In support of this position, the defendant relies exclusively on *United States v. Dailey*, 589 F.Supp. 561 (D.C.Mass.1984), *vacated*, 759 F.2d 192 (1st Cir.1985). The *Dailey* holding was vacated and remanded by the First Circuit in 1984. Missouri law is consistent with the opinion of the First Circuit. In *State v. Holt*, 592 S.W.2d 759, 774[22] (Mo. banc 1980), the Missouri Supreme Court stated, "it has long been the rule that when a witness is given lesser punishment for agreeing to testify, 'such fact does not disqualify him as a witness, but may be shown as affecting the credibility of his evidence'." Any bargain struck between a state and accomplices who testify against a defendant do not render their testimony per se inadmissible, though it is a vital issue affecting their credibility. *State v. Shives*, 601 S.W.2d 22, 29[11] (Mo. App.1980). In the instant case, the "deal" made by Washington was presented to the jury. Additionally, counsel for defendant explored the "deal" on cross-examination. It is for the jury, and not the appellate court, to determine the credibility of a witness, and motive affects the weight and credibility of the testimony. *State v. Shaw*, 646 S.W.2d 52, 53–54[2] (Mo.1983). Accordingly we reject defendant's second point.

Finally, defendant's third point is the trial court erred in overruling his motion to suppress the pre-trial identification testimony of witness Angela Nick. Defendant further asserts the testimony of Angela Nick was unreliable, given the totality of the circumstances, and so unduly suggestive as to deny defendant due process. The identification of the defendant by Angela Nick, defendant contends, does not meet the test for reliability as provided in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

In determining admissibility of identification testimony, reliability rather than suggestiveness provides the linchpin securing defendant's due process rights. *State v. Robinson*, 641 S.W.2d 423[7] (Mo. banc 1982). In determining the reliability of an out-of-court identification, the court looks at the totality of the circumstances, including: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, supra; *State v. Robinson*, 641 S.W.2d at 427[9].

The jury had adequate opportunity to evaluate the credibility of Angela Nick as a witness. This court cannot weigh evidence or substitute its own assessment of the credibility of a witness for the assessment made by the jury. *State v. Williams*, 376 S.W.2d 133[11] (Mo.1964). The credibility of a witness is a matter for the trial court to determine. *State v. Williams*, 600 S.W.2d 120, 122[8] (Mo.App.1980), and any inconsistencies in the evidence are matters for the jury to decide. *State v. Landes*, 661 S.W.2d 596[2] (Mo.App.1983).

The trial court determined that the pre-trial identification was not unduly suggestive. Our review is limited to a determination of whether there was sufficient evidence to sustain the trial court's finding. *State v. Kelly*, 539 S.W.2d 106, 109[3] (Mo. banc 1976).

Angela Nick described the clothing worn by two of the men who first entered the apartment. From the ten to twelve photographs shown to her by the police, Angela Nick recognized a photo of the defendant. She remembered defendant as being the man who pistol-whipped her in the bedroom. She also recognized the defendant as the man who took her sister Lisa into the bedroom. She recognized the defendant from the photographs the first time she remembered viewing them. Angela Nick picked the defendant out of a line-up. She was certain of her identification on those occasions and in court.

We find the evidence clearly sufficient for the trial court to find the witness' identification of defendant reliable. The reliability of the witnesses' identification was established independently of any alleged suggestive pre-trial identification procedure. Therefore, admission of the in-court identification must be deemed proper. *State v. Kirk*, 636 S.W.2d 952[9] (Mo.1982). We rule this point against defendant.

Judgment affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.