UNITED STATES of America, Appellee,

v.

John Walter WATERMAN, a/k/a Jack Waterman, Appellant.

No. 82–1777.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1982.

Decided April 8, 1983.

Rehearing and Rehearing En Banc Denied July 8, 1983.

Ronald D. Lahners, U.S. Atty. for the District of Nebraska, and Robert F. Kokrda, Asst. U.S. Atty., Omaha, Neb., for appellee.

James Martin Davis, and Terry M. Anderson, Omaha, Neb., for appellant.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

BRIGHT, Circuit Judge.

John Waterman appeals his jury convictions on five counts of mail fraud in violation of 18 U.S.C. §§ 1341, 1342 (1976). The mail fraud charges arose out of Waterman's alleged connection with an arson-for-profit ring in Omaha, Nebraska. On appeal, Waterman argues that the district court erred in overruling his motion for production of certain FBI notes of a Government witness' pretrial interviews and that the prosecution presented insufficient evidence to support his convictions.

I. *Background.*

Eugene Gamst orchestrated the arson-for-profit scheme underlying Waterman's convictions. This court has previously upheld the convictions of several of Gamst's other coconspirators. *See United States v. Lemm,* 680 F.2d 1193 (8th Cir.1982). Originally, a grand jury indicted Gamst along with his coconspirators, but the Government dropped fifteen of the eighteen counts against him and allowed him to plead guilty to the remaining three counts in return for his agreement to turn state's evidence. After the *Lemm* trial, Gamst agreed to collaborate further with the Government in order to provide a basis for charging additional participants in the arson scheme and the Government promised to recommend a two-year reduction in Gamst's twelve-year sentence.

At Waterman's trial, Gamst testified that beginning in 1976, he and his accomplice, Peggy O'Brien, recruited people willing to participate in an arson-for-profit scheme. Typically, Gamst would obtain a house for his coconspirators, purchase insurance and cheap furniture, and then arrange a fire. Gamst instructed the people living in the houses on how to start the fire, how to act,

and what to tell the authorities. The coconspirators collected inflated fire insurance claims by overstating the value of the property damaged by the fires. Gamst, a public insurance adjuster, often personally adjusted the fires that he had arranged. He also occasionally contracted for repairs to the fire-damaged houses.

Gamst testified that he met Waterman in the spring of 1976, when he adjusted a fire at a house owned by Waterman on Burdette Street in Omaha.[1] After discussing the arson scheme with Gamst, Waterman, a real estate agent, allegedly agreed to locate and finance properties suitable for Gamst's arson activities. According to Gamst, Waterman assisted him in arranging four arson fires from 1976 to 1978. First, Waterman would locate a suitable house, and then, provide money for the down payment and the purchase of interior furnishings. Gamst also testified that Waterman arranged a fifth fire on his own, which took place at Waterman's girlfriend's house.[2]

At Waterman's trial, Peggy O'Brien corroborated most of Gamst's testimony concerning the first four fires. Another witness, Phillip Dahl, who did not participate in the arson scheme, testified that Waterman attempted to solicit him to stage an arson fire. Waterman testified on his own behalf and denied having anything to do with Gamst's arson scheme. He admitted handling the sales of the houses involved in counts I, II, and IV, and notarizing the deeds of sale for the property involved in count III, but he insisted that he acted solely in his legitimate capacity as a real estate agent. He also denied setting an arson fire at his girlfriend's house.

On March 26, 1982, the jury returned a verdict of guilty on all five counts of mail fraud. The court sentenced Waterman to two years on each count, to be served consecutively. This appeal followed.

---

1. This fire has not been charged as an arson fire.

2. The five fires, each of which forms the basis for one count of the indictment, occurred at

5001 North 60th Street, 7210 South 33rd Street, 4319 North 32nd Street, 5524 North 1026th Street, and 1335 South 30th Avenue, all in Omaha.

## II. *Discussion.*

### A. *FBI notes.*

Prior to his trial, Waterman moved for production of certain notes made by an FBI agent based on interviews with Gamst. When Gamst decided to plead guilty, the FBI debriefed him in several interviews. According to the Government, the notes from these interview sessions were eventually transcribed onto forms, and provided to Waterman's attorney during discovery. Prior to both the completion of the forms and the commencement of the first trial, an FBI agent used the debriefing notes to prepare a short outline of Gamst's testimony for the benefit of the defendants in the first trial. This outline has apparently since been destroyed. Waterman does not question the good faith of the Government's representations concerning the outline, but he claims that he should have had access either to the outline or to the agent who prepared it, because information from either source might have been useful as exculpatory evidence. Waterman contends the trial court erred in permitting Gamst to testify for the prosecution without first affording Waterman access either to the FBI agent or to his outline. We disagree.

In view of the fact that Waterman admits that he received the forms detailing the results of Gamst's FBI interviews, the district court could properly have determined that the Government did not need to produce the agent or the agent's outline under either the Jencks Act, 18 U.S.C. § 3500 (1976), or *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (suppression of exculpatory evidence violates due process).

Even if the outline were still in existence, it would not constitute a witness' "statement" under the Jencks Act. 18 U.S.C. § 3500(e)(1); *see Kane v. United States,* 431 F.2d 172, 174–75 (8th Cir.1970). Moreover, Waterman has failed to show that the outline contained evidence that would have materially affected the outcome of the trial as required under *Brady v. Maryland, supra,* 373 U.S. at 87, 83 S.Ct. at 1196–97. On the contrary, it appears that the outline merely contained a summary of the information available on the interview forms provided to Waterman. Accordingly, we reject Waterman's contentions on this issue.

### B. *Sufficiency of the Evidence.*

Waterman challenges the sufficiency of the evidence to support his conviction, contending that: (1) the evidence taken as a whole was insufficient to sustain a conviction on all, or any, of the counts; and (2) the mailings proved by the Government were too remote from the scheme and from Waterman to support convictions for mail fraud. We address each ground in turn.

Waterman contends that the testimony of Gamst was so riddled with inconsistencies that no reasonable person could have believed what he said. We disagree. Determining a witness' credibility is primarily the function of the jury. The defense received a full and fair opportunity to explore any weaknesses of Gamst's story at trial. Furthermore, the Government presented additional witnesses whose testimony corroborated that of Gamst and independently confirmed Waterman's role in arranging the arson fires charged in counts I through IV.

Waterman's conviction on count V depends entirely on Gamst's uncorroborated testimony. Gamst, however, possessed no first-hand knowledge of the fire underlying count V because he did not participate in arranging it. His only information came from two alleged conversations with Waterman, one before and one after the fire. In the earlier conversation, Waterman allegedly told Gamst that he was considering arranging a kitchen fire at his girlfriend's house. According to Gamst, Waterman said the house was located "around 30th or 32nd Street in Omaha." Gamst testified that on one occasion he accompanied Waterman to this house, but Gamst conceded that he could not remember its address or even identify it by sight. Gamst stated that at the later conversation, Waterman announced that he had "torched" his girlfriend's house and wished

Gamst had been available to adjust the insurance claim. According to Gamst, Waterman stated that he received $17,000 from the insurance company for the fire.

We do not believe the record contains substantial evidence to support Waterman's conviction on count V. While a kitchen fire did occur at the residence of Waterman's girlfriend at 1335 South 30th Street in Omaha, the Government presented no evidence that this fire resulted from arson. The insurance company adjuster who adjusted this fire testified that his investigation discovered no evidence of arson. The Omaha fire department conducted an investigation and reached a similar conclusion. In addition, the insurance adjuster contradicted Gamst's testimony, stating that his company paid out only $13,947.38 on the fire.

Based on this evidence, we conclude that the record lacks substantial evidence to support Waterman's conviction on this count. The only evidence linking Waterman to the fire came from Gamst, whose testimony was, at best, only marginally probative. In the absence of any evidence of arson, the Government's case must fail. Viewing the evidence in this light, we are constrained to reverse Waterman's conviction on count V for lack of substantial evidence to support the conviction.

■ Waterman argues that the mailings introduced into evidence by the Government were too remote from the scheme and from himself to support mail fraud convictions. The mail fraud statute does not encompass all frauds, but extends only to those that invoke usage of the United States Postal Service.[3] This court recently outlined the requisite relationship between the fraudulent scheme and the use of the mails:

> To establish a violation of § 1341 the government must prove a scheme to defraud and the mailing of a letter or other

instrument for the purpose of executing the scheme. Although "it is not necessary that the scheme contemplate the use of the mails as an essential element," it is necessary for the mailings to be "sufficiently closely related to [appellant's] scheme to bring his conduct within the statute." If the appellant's scheme reached fruition prior to the mailings as did the respondent's in *United States v. Maze,* [414 U.S. 395, 402, 94 S.Ct. 645, 649, 38 L.Ed.2d 603 (1974)], the mailings were not sufficiently related to the scheme to bring his conduct within the statute. [*United States v. Sedovic,* 679 F.2d 1233, 1237–38 (8th Cir.1982), *quoting United States v. Cooper,* 596 F.2d 327, 329 (8th Cir.1979) (citations omitted, brackets in original).]

The statute provides that a defendant must "cause" the use of the mails, but "a defendant will be deemed to have 'caused' the use of the mails * * * if the use was the reasonably foreseeable result of his actions." *United States v. Wrehe,* 628 F.2d 1079, 1085 (8th Cir.1980).

■ Waterman contends that the mailings offered by the Government were too remote to support the charges against him. In proving counts I, II, and IV of the indictment, the Government introduced internal insurance company communications between local agents and their home offices. Two of the communications served to establish or estimate the reserves necessary to pay the claims arising from the arson fires, and one communication forwarded an application for homeowner's insurance to the home office. Although Waterman did not personally initiate these mailings, he could have reasonably foreseen that the insurance companies would engage in routine mailings while processing the applications and claims necessitated by the arson scheme. *See United States v. Flemino,* 691 F.2d 1263, 1265 (8th Cir.1982) (*per curiam*).

---

**3.** Section 1341 provides, in pertinent part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, * * * for the purpose of executing such scheme or artifice * * * knowingly causes to be delivered by mail * * * any [matter or thing whatever to be sent or delivered by the postal service], shall be fined not more than $1,000 or imprisoned not more than five years, or both." 18 U.S.C. § 1341.

In proving count III of the indictment, the Government demonstrated that the insurance agent sent a copy of the homeowner's insurance policy to the policyowner. Although this specific use of the mails may not have been essential to the scheme, the acquisition of insurance coverage on the house was "incident to an essential part of the scheme." *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954). If the owner had not received his copy of the policy, he might not have been aware of the scope of his insurance coverage. *See United States v. Moss,* 591 F.2d 428, 437 (8th Cir.1979) (mailing that facilitates processing of insurance application and policy satisfies section 1341). Waterman could have reasonably foreseen that the company would use the mails to deliver the policy.

Accordingly, Waterman's point is denied on all counts.

Waterman also argues that even if the mailings constituted mail fraud, they were not sufficiently connected to him to support his convictions. While it may be true that Waterman did not personally apply for insurance coverage on the houses in question, the jury could properly have found that Waterman knew that one of his coconspirators would obtain insurance. Waterman could certainly have foreseen that the mails would be used in processing the applications for the insurance coverage and insurance claims. Accordingly, this point, too, must fail.

III. *Conclusion.*

We affirm John Waterman's convictions on counts I through IV. The district court properly denied Waterman's motion for production of the FBI notes, because they merely summarized information provided to Waterman on the forms. Although the evidence at trial was not unequivocal, when viewed in the light most favorable to the jury's verdict, it supports Waterman's convictions on counts I through IV. Finding insufficient evidence to support Waterman's conviction on count V, we reverse count V.