**UNITED STATES of America, Appellee,**

v.

**John Walter WATERMAN, a/k/a Jack Waterman, Appellant.**

**No. 83–2159.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1984.

Decided May 2, 1984.

Consideration En Banc
Sept. 20, 1984.

Michael Tigar, Washington, D.C., argued, for appellant.

Robert F. Kokrda, Omaha, Neb., argued, for appellee.

Before LAY, Chief Judge, and HEANEY and BOWMAN, Circuit Judges.

HEANEY, Circuit Judge.

John W. (Jack) Waterman appeals from the district court's denial of his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (1982). Waterman claims that an agreement between the government and the star prosecution witness against him irreparably tainted that witness' testimony, depriving Waterman of the fundamental fairness protected by the United States Constitution. We hold that the government's agreement with its key witness hampered the truth-finding function of the jury to a degree which cannot be reconciled with the fair procedures guaranteed by the due process clause of the fifth amendment. Because the testimony given pursuant to this agreement was critical to support Waterman's conviction, we reverse the district court's denial of his section 2255 motion.

We are not unfamiliar with Waterman or his case. A jury convicted him on five counts of mail fraud arising out of an arson-for-profit scheme conducted in Omaha, Nebraska, from 1976 through 1978. *See* 18 U.S.C. §§ 1341–1342 (1982). On June 17, 1982, the district court sentenced Waterman to two years imprisonment on each count, the terms to run consecutively, for a total sentence of ten years. Waterman appealed to this Court, alleging that the district court improperly refused to order the production of FBI notes concerning the pretrial interviews of a prosecution witness and challenging the sufficiency of the evidence supporting each count against him. *United States v. Waterman*, 704 F.2d 1014, 1016 (8th Cir. 1983). We found no merit to Waterman's allegation concerning the FBI notes, and held the evidence at trial sufficient to support four of the five counts on which Waterman was convicted. We reversed the conviction on the fifth count for insufficient evidence because it rested entirely upon the uncorroborated hearsay testimony of the ringleader of the fraudulent scheme, Eugene Gamst. *Id.* at 1017–1018.

Waterman then petitioned this Court for a panel rehearing or a rehearing en banc. He based this petition upon an allegedly improper agreement between the government and Gamst at the time of Waterman's trial. Gamst had previously pled guilty to participation in arson and fraud activities in Omaha and elsewhere. He received a twelve-year sentence for his crimes pursuant to an agreement with the government to testify against others in the scheme. *Id.* at 1016. We upheld the convictions of several of Gamst's accomplices on direct appeal in *United States v. Lemm*, 680 F.2d 1193 (8th Cir.1982), *cert. denied*, 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983). After the trial in *Lemm*, Gamst sought a reduction of his twelve-year sentence under Fed.R.Crim.P. 35. On petition for rehearing or rehearing en banc in the Waterman appeal, Waterman alleged that the government agreed to recommend a two-year reduction in Gamst's sentence if his continued cooperation led to further indictments. Waterman asserted that this "bounty" or

"contingency" agreement tainted Gamst's testimony against him.

We declined to address this matter on Waterman's petition for rehearing or rehearing en banc with the following observations:

> Waterman's petition raises a serious matter. However, the alleged impropriety of the Government's agreement with Gamst was never raised on direct appeal as a matter of error by brief or directly in oral argument. In addition, it would appear that a factual record may need to be developed on this issue. Accordingly, we deny the petition for rehearing, but without prejudice to Waterman's presenting this claim to the district court by an appropriate petition under 28 U.S.C. § 2255 or under Rule 35 of the Federal Rules of Criminal Procedure.

*United States v. Waterman,* 716 F.2d 482, 482 (8th Cir.1983) (order on petition for rehearing).

Waterman filed the present section 2255 motion on July 27, 1983. The district court held a hearing on the motion on August 11, 1983. Waterman's counsel presented exhibits, stipulations of counsel, and argument regarding the allegedly improper agreement with Gamst.

The record developed below contains a December 16, 1980, letter from Gamst's attorney to an assistant United States attorney in Omaha setting forth the terms of a purported oral agreement for Gamst's further cooperation with the government.[1] The government attorney replied by letter dated December 18, 1980, stating that the government "would be interested in Mr. Gamst's further cooperation by way of truthful testimony in any further Grand Jury investigations, indictments, and trials, if necessary." He agreed that "the government would be willing to acquiesce in a recommendation of two years reduction of sentence in the motion to reconsider sentence now pending."[2]

---

**1.** The substance of the December 16, 1980, letter from Gamst's counsel was the following:

> You indicated to me that if Mr. Gamst cooperates in the Grand Jury investigation of certain individuals and if charges are brought against those persons you would, in the context of a motion to reduce sentence:
> 1. Affirmatively recommend to the Court that Mr. Gamst's sentence be reduced by a maximum of two years. It is my understanding that this two year period is not a limitation on the extent of any reduction for which we may move nor is it intended to be a limitation on the Court's authority to grant a further reduction if it deems such action appropriate.
> 2. You would inform the parole commission and any other appropriate persons of the fact and extent of Mr. Gamst's cooperation with the government.
> In the event Mr. Gamst cooperates, and no charges are brought, you indicated that:
> 1. You would acknowledge and inform the Court of Mr. Gamst's cooperation with the government. This would be done in the context of our Rule 35 motion, but would not involve any actual recommendation of a reduced sentence.
> 2. As I understand it, your willingness to inform the parole commission and, if appropriate, others of Mr. Gamst's cooperation is not contingent upon charges being brought.

> Therefore, I assume from our conversation that this action would be taken by you in return for cooperation irrespective of actual charges.

**2.** The key paragraph in the government's December 18, 1980, response read in full:

> As we have discussed, it now appears that there are further matters that warrant investigation in this arson enterprise. These matters may lead to criminal charges being brought against other individuals not known at the time the original charges were brought. Naturally, we would be interested in Mr. Gamst's further cooperation by way of truthful testimony in any further Grand Jury investigations, indictments, and trials, if necessary. Therefore, the government would be willing to acquiesce in a recommendation of two years reduction of sentence in the motion to reconsider sentence now pending before Judge Denney. We would also be willing to acknowledge his cooperation to other agencies and the Bureau of Prisons. Please note that the testimony of Mr. Gamst concerning his knowledge of these matters could well extend past the grand jury proceedings to any trials or hearings if necessary. Again, all that we would request would be his truthful testimony concerning his recollections of these matters.

The district court considered these letters and a stipulation of counsel regarding their meaning, and received other evidence reflecting the government's actions after Gamst's testimony against Waterman. The court found:

> After Gamst's conviction and incarceration, he agreed to collaborate with the government in order to provide a basis for charging additional participants in the arson scheme. *The substance of the agreement was that, if Gamst's cooperation in the form of truthful testimony led to further indictments, the government would (1) affirmatively recommend that Gamst's sentence be reduced by two years,* and (2) inform appropriate federal agencies of the fact and extent of Gamst's cooperation. *If, however, Gamst's testimony did not lead to the indictment of other individuals, then the government* would acknowledge and inform the Court of Gamst's cooperation, but *would not specifically recommend any reduction in his sentence.* The record reveals that as a result of Gamst's testimony at the grand jury investigation and trial of Waterman, the government in fact made an affirmative recommendation that Gamst's sentence of imprisonment be reduced by two years.

*United States v. Waterman,* CR 81–0–47 (D.Neb. August 17, 1983) (memorandum opinion and order) (emphasis added).

Waterman questioned the constitutionality of this agreement under the sixth amendment provisions ensuring the fairness of criminal proceedings and the due process clause of the fifth amendment. He also claimed that the agreement violated the spirit, if not the letter, of 18 U.S.C. § 201 (1982), which proscribes bribery of witnesses; that it encouraged perjury to an extent which could not be rectified by cross-examination; and that it undermined the integrity of our judicial system.

The district court disagreed with Waterman's assertions that the agreement with Gamst violated the Constitution or any other provision of law. The court noted that agreements not to prosecute or to recommend leniency in punishment in exchange for cooperation with the government have long been approved. It stressed that the agreement with Gamst was admitted into evidence at the Waterman trial and subjected to thorough cross-examination by Waterman's attorneys, that the agreement only supplemented Gamst's earlier commitment to testify truthfully as part of his plea bargain, and that substantial evidence other than Gamst's testimony supported Waterman's conviction. The court concluded that the government's conduct in this context did not violate the fundamental fairness mandated by the due process clause. *United States v. Waterman, supra,* CR 81–0–47 at 3–4. Waterman's appeal is in essence a disagreement with the legal conclusion drawn from the facts by the district court.

The parties have been unable to cite us any cases directly on point. We are not faced with the situation of a paid informant who might be more likely to entrap a defendant because of the contingent nature of her or his compensation. *See United States v. Civella,* 666 F.2d 1122, 1129 (8th Cir.1981). Nor do the facts before us resemble government participation in illegal activity with a defendant prior to trial through undercover agents or paid informants which, although not technically entrapment, is so outrageous as to deny the defendant due process of law. *See United States v. McCaghren,* 666 F.2d 1227, 1230–1231 & nn. 5–7 (8th Cir.1981). Likewise, we are not asked to find a due process violation based upon the government's failure to disclose an immunity agreement with a prosecution witness. *See Giglio v. United States,* 405 U.S. 150, 153–155, 92 S.Ct. 763, 765–766, 31 L.Ed.2d 104 (1972); *United States v. Bigeleisen,* 625 F.2d 203, 205–210 (8th Cir.1980). Instead, we must decide whether an agreement to procure testimony about accomplished facts, which places a premium on testimony adverse to a defendant, creates a risk of perjury so great that even the jury's full knowledge of the agreement is insufficient to protect the fundamental fairness inherent in the due process clause.

We recognized that an agreement granting government favors to a prosecution witness in return for truthful testimony about others is not *per se* illegal in *United States v. Librach*, 536 F.2d 1228, 1229–1230 (8th Cir.), *cert. denied*, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976). In *Librach*, we went on to discuss the court's supervisory powers to require fair conduct at trial by the government, however, and held that the immunity agreement entered with a witness named Fowler in that case did not constitute unfair prosecutorial conduct. We stated,

> The agreement was made and binding upon the government before Fowler testified; it was not contingent upon the government's satisfaction with the content of the testimony. Fowler could testify truthfully and fully pursuant to the agreement without fear of reprisal. His testimony related to known facts; the agreement did not require the witness to seek out incriminating evidence against the appellant. * * * Further, the jury was fully apprised of the conditions under which Fowler testified.

*Id.* at 1230 (citations omitted).

These observations regarding the fair conduct of trials under a court's supervisory powers are equally applicable to the fundamental fairness mandated by the due process clause. Thus, we must now answer the question left open in *Librach* as to the fairness of agreements to reward those who testify for the government *contingent upon* the content and results of their testimony.

■ We agree with Waterman that the government cannot consistent with due process offer favorable treatment to a prosecution witness contingent upon the success of the prosecution. Such an agreement is nothing more than an invitation to perjury having no place in our constitutional system of justice. The government attempts to avoid this commonsense approach to due process in the instant case by distinguishing the agreement made with Gamst and emphasizing the jury's ability to decide upon the credibility of witnesses. It also declares that Waterman was not prejudiced by the agreement with Gamst. We cannot agree as a matter of law or fact.

■ Although the agreement in this case was contingent upon the government bringing charges against others, rather than upon successful convictions, we believe that the circumstances surrounding the agreement cast a shadow over both Gamst's pretrial cooperation with the government and his testimony at Waterman's trial. As the district court found, the contingency agreement to recommend a two-year reduction in Gamst's sentence supplemented his earlier agreement to cooperate in the government's continuing investigations and prosecutions involving the arson-for-profit scheme. Should Gamst have decided to stretch or disregard the truth to obtain Waterman's indictment, and thus a favorable recommendation pursuant to the contingency agreement on the motion to reduce his prior twelve-year sentence, he would be foolish to change his story during the Waterman trial at which he also was bound to testify. Moreover, the government's December 18, 1980, letter acknowledging the contingency agreement specifically referred to Gamst's "cooperation by way of truthful testimony in any further * * * trials, if necessary." Therefore, Waterman's claim that the contingency agreement tainted Gamst's testimony at trial is not a bald attempt to bootstrap improprieties before the grand jury into constitutional trial error. *Cf. United States v. Calandra*, 414 U.S. 338, 345, 351, 94 S.Ct. 613, 618, 621, 38 L.Ed.2d 561 (1974) (indictment valid on its face cannot be challenged because the grand jury acted on inadequate, incompetent, or even unconstitutionally obtained evidence).

In addition, we cannot accept the argument that the jury, which was given notice of the contingency agreement, could legitimate this contingency agreement by deciding for itself whether Gamst was testifying

truthfully. This is not the case where a defendant who thoroughly attacks a witness' credibility on cross-examination might therefore be unable to show prejudice in the government's failure to disclose a non-contingency immunity agreement with that witness. See United States v. Smith, 538 F.2d 1332, 1334 (8th Cir.1976) (per curiam). This case involves not the undisclosed possibility of bias, but the disclosed encouragement and reward of bias. Waterman and the jury were made aware of the letters between Gamst's attorney and the government.[3] This disclosure was insufficient, however, to overcome the due process problems inherent in the contingency agreement itself. In the first place, the government's December 18, 1980, letter only vaguely adopted the contingent nature of the agreement, so the jury might have assumed that the government was committed to help Gamst in the same manner regardless of the fruitfulness of his cooperation. More fundamentally, however, we see no place in due process law for positioning the jury to weed out the seeds of untruth planted by the government. Certainly Gamst might have lied regardless of the contingency agreement and the jury was generally commissioned to determine the truth of his testimony; but that is no reason for the government to give him further incentive to selectively remember past events in a manner favorable to the indictment or conviction of others.

Finally, given our decision that the contingency agreement with Gamst violated the requirements of due process in Waterman's trial, we cannot accept the government's assertion that Waterman was not prejudiced by the violation. Although we noted on direct appeal that evidence independent of Gamst's testimony supported Waterman's convictions on the four counts which we affirmed, United States v. Waterman, supra, 704 F.2d at

1017, the independent evidence was not so overwhelming that the erroneous admission of Gamst's testimony could for this reason be labeled harmless.

The government alternatively argues that a lack of prejudice in this case may be established by the similarity between Gamst's testimony regarding Waterman in proceedings prior to the December, 1980, contingency agreement and his testimony at the Waterman trial after that agreement. We have serious reservations about this approach to measuring the prejudicial effect of the illegal agreement because it assumes that Gamst's prior testimony is an accurate benchmark for the truth. To the contrary, the contingency agreement might have simply been an added incentive for Gamst to again risk perjury conviction and continue in earlier stated lies.

Nonetheless, we have carefully reviewed Gamst's testimony at the trial of other participants in the fraudulent scheme during June and July of 1980, United States v. Stonys, CR 80–0–32 (D.Neb.1980), aff'd sub nom. United States v. Lemm, supra, and compared that to the Gamst testimony at Waterman's trial. Gamst referred to Waterman in the earlier trial and stated that Waterman, as a real estate agent, obtained houses for Gamst and others with the knowledge that the houses would be burned for insurance profit. After the contingency agreement had been entered into, however, at the Waterman trial Gamst detailed times, places, conversations, and arrangements that gave factual context to Waterman's participation in the scheme. Significantly, at the Waterman trial Gamst recounted instances in which Waterman provided the front money to purchase several houses for arson and split the profits of the insurance proceeds with Gamst. None of the statements made by Gamst during prior proceedings intimated such a

**3.** Perhaps the better course in this case would have been for Waterman to raise his due process objection to Gamst's testimony at his trial on the merits. Because the government has not objected to Waterman's failure to raise this issue before the trial court, we hold that Waterman should not be denied postconviction relief for any procedural defects in his motion. See Manson v. Brathwaite, 432 U.S. 98, 103 n. 7, 97 S.Ct. 2243, 2247 n. 7, 53 L.Ed.2d 140 (1977).

degree of involvement by Waterman. Thus, we cannot decide that Gamst's detailed testimony at Waterman's trial, which bolstered his conclusive inculpatory statements about Waterman before, was not influenced by the contingency agreement entered into by Gamst in the interim.

The government's last attempt to show lack of prejudice to Waterman is its claim that Gamst did not even know of the contingent nature of his agreement with the government. The district court made no finding of fact in this regard, but its memorandum opinion and order must be read to assume that Gamst had full knowledge of the contingency agreement. Indeed, Gamst testified at the Waterman trial that he knew the government had offered to make a recommendation for a two-year reduction in his sentence, which was consistent with the contingency agreement. Thus, we think as a matter of law that this record can only be read to establish that Gamst knew of the contingency agreement both before and during Waterman's trial.

In sum, we are convinced that due process cannot be interpreted to allow the government to reward its witnesses based upon the results of their testimony. There simply is no reason to offer a witness favorable treatment for anything other than truthful cooperation in the government's quest for justice. For the above reasons, we reverse the district court's denial of Waterman's section 2255 motion and remand with directions to the district court to vacate Waterman's sentence and order his release from custody. The government of course is free to retry Waterman.

This case has been considered by the Court en banc.* Judges Heaney, Bright, Arnold, and Bowman would reverse the district court and adhere to the panel opinion. Judges Ross, McMillian, John R. Gibson, and Fagg would affirm the district court. Therefore, the judgment of the district court is affirmed by an equally divided court.

* Chief Judge Donald P. Lay did not participate in the vote on this case.