UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank CARCAISE, Defendant-Appellant.

No. 84–5035.

United States Court of Appeals,
Eleventh Circuit.

June 24, 1985.

Arthur W. Tifford, Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Miami, Fla., Neil Karadbil, Asst. U.S. Atty., Fort Lauderdale, Fla., for plaintiff-appellee.

Before RONEY and TJOFLAT, Circuit Judges, and BROWN*, Senior Circuit Judge.

JOHN R. BROWN, Senior Circuit Judge:

Frank Carcaise appeals from his conviction on drug offenses and the district court's imposition of consecutive 15 year sentences followed by a three year special parole term. We affirm the district court in all respects.

### Background

As a result of the Drug Enforcement Agency's (DEA) operations in Florida, Frank Carcaise and Michael Thifault were indicted on an array of drug offenses ranging from conspiracy to possession and distribution of controlled substances.[1] Upon completion of the evidence, the district judge acquitted Michael Thifault on all counts. Although Carcaise was acquitted as to Counts II and III of the indictment,[2] he was sentenced to 15 years imprisonment on the remaining counts and a three year special parole term.[3] Carcaise appeals urging: (1) insufficient evidence to support conspiracy convictions; (2) uncorroborated testimony of a paid, contingent-reward informant; (3) invalid consecutive and concurrent sentences based on merger of offenses; (4) error in imposing a three year term of special parole.

### I. Sufficiency of Evidence to Support Conspiracy Conviction

Carcaise contends that there is no evidence to prove beyond a reasonable doubt that he conspired with persons unknown to possess and distribute diazepam, in violation of 21 U.S.C. § 846.[4] On this basis, he argues that the district court erred in denying his motion for judgment of acquittal.

The standard of review for sufficiency of the evidence to support a criminal conviction is whether "a reasonable trier of fact could find that the evidence establish-

---

* Honorable John R. Brown, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Nine counts were returned by the federal grand jury. Count I charged Thifault, Carcaise, and persons unknown with conspiring to possess, with intent to distribute, diazepam, a Schedule IV controlled substance, in violation of 21 U.S.C. § 846. Counts II and III, respectively, charged that on February 11, 1983, Carcaise possessed with intent to distribute, and did distribute, diazepam, in violation of 21 U.S.C. § 841(a)(1). Counts IV and V charged Carcaise with the possession of diazepam, with intent to distribute, and the actual distribution of diazepam on March 22, 1983. Counts VI and VII charged Carcaise with possession with intent to distribute cocaine, a Schedule II controlled substance, and distribution of cocaine on April 20, 1983. Counts VIII and XIX charged Carcaise and co-defendant Thifault with intent to distribute diazepam and distribution of diazepam on May 25, 1983.

2. The district court ruled that there was a material variance between the indictment charging Carcaise with possession with intent to distrib-

ute and the distribution of diazepam, a Schedule IV controlled substance, and the evidence, which showed that the substance in question was Methaqualone, a Schedule II controlled substance.

3. The district court imposed sentence in the following manner: consecutive three year prison terms on counts I, IV, V, VIII, and XIX (the diazepam counts) with concurrent three year special parole terms imposed with respect to counts IV, V, VIII and XIX; 15 year prison sentences, each followed by a three year special parole term, were imposed with respect to counts VII and VIII (the cocaine counts); the cocaine sentences were to run concurrently with each other and with the diazepam sentences.

4. Carcaise's co-defendant, Michael Thifault, was acquitted of the conspiracy charge. The indictment returned against Carcaise also charged that he conspired with persons unknown to the grand jury.

es guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd. on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). Since *Bell* we no longer require that the evidence must "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. . . ." *United States v. Bell* at 549. A review of the sufficiency of the evidence to support a conviction requires that all evidence be viewed in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). All reasonable inferences must be drawn in favor of supporting the conviction. *United States v. Bain,* 736 F.2d 1480, 1485 (11th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 340, 83 L.Ed.2d 275 (1984); *United States v. Ceballos,* 706 F.2d 1198, 1202 (11th Cir.1983).

█ Our inquiry into the validity of Carcaise's conspiracy conviction is founded upon the evidence adduced at trial.[5] Where evidence supports an assertion that the defendant conspired with unknown persons to violate narcotics law, a guilty ver-

dict must be upheld. *United States v. Goodwin,* 492 F.2d 1141, 1144 (5th Cir. 1974). The critical element of evidence is that such unknown persons must exist. *United States v. Lance,* 536 F.2d 1065 (5th Cir.1976). The government presented taped conversations involving Frank Carcaise.[6] These taped conversations are evidence that appellant conspired with persons unknown to distribute and possess diazepam.

█ Carcaise relies upon *United States v. Sheikh,* 654 F.2d 1057 (5th Cir. Unit A 1981), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982).[7] This reliance is misplaced because the evidence in *Sheikh* showed that the defendant associated with two persons from Iran and it was from Iran that a display case, containing heroin, was shipped to the United States.[8] The Fifth Circuit held that "mere association between persons, however, cannot suffice as proof of a conspiracy." *United States v. Sheikh, supra* at 1063.

Unlike in *Sheikh,* however, the evidence presented in Carcaise's case shows that he was more than merely associating with per-

---

5. Special Agent Bachman testified that Carcaise said he would have his people fly the methaqualone into Haiti and then to the United States. The conspiracy charge related to diazepam and not to methaqualone. As to the conspiracy charge relating to diazepam, Agent Bachman testified that Carcaise said he could obtain the diazepam from his Canadian source. Other testimony revealed that Carcaise was seen with Robert Baker. Baker drove a brown Cadillac with Canadian license plates; thus, references on the tapes to a Canadian source may have been to Baker. This would make Baker a person who was known, not unknown, to the grand jury for purposes of the conspiracy conviction.

6. On April 19, 1983, Carcaise, when asked about the date for delivery of the diazepam, stated: "I just talked to the guy and I should know later." Carcaise later confirmed that Special Agent Bachman wanted 250,000 pills, and Carcaise said "we're ready, but I don't have that many left in stock." On May 4, 1983, Carcaise told Bachman, "we'll be ready by the end of the week; they had a security reason and they wanted to take an extra couple of days . . ." Several days before delivery of the diazepam, Carcaise stated that "I spoke to my friend today . . . they talked to their people . . . the delivery should be

Wednesday." Carcaise said that he would be in touch with Brock (government's informant) "as soon as I make contact with these people." On May 11, 1983 Carcaise said that "I talked to Drew [spelled phonetically], he says it will be here today . . ." Prior to the delivery of 250,000 diazepams, Carcaise stated to Special Agent Brock that ". . . I've got these people waiting . . . they're really getting pissed at me." Following the delivery of the diazepams on May 25, 1983, Carcaise spoke by phone to Special Agent Bachman and asked if he wanted to repeat the deal. Carcaise stated "I got a call into the people . . . they're going to see if they can . . . I'll know in a couple of hours."

7. The Eleventh Circuit adopted prior Fifth Circuit decisions as precedent in *Bonner v. City of Prichard,* 661 F.2d 1206 (1981).

8. The government asserted that Sheikh must have conspired with unknown persons because the heroin was shipped in a package from Iran to the United States. Rejecting this shipment theory of conspiracy, the court aptly stated that it was reasonable to infer that the shipper of the display case may not have known that heroin was concealed in the display case. *United States v. Sheikh, supra* at 1063.

sons unknown to possess and distribute diazepam. The essential element of a drug conspiracy charge is an agreement to violate federal narcotics law. *United States v. Figueroa,* 720 F.2d 1239, 1244 (11th Cir. 1983); *United States v. Spradlen,* 662 F.2d 724, 727 (11th Cir.1981).[9] A review of the evidence in the light most favorable to the government requires that we hold the evidence sufficient to establish Carcaise's conspiracy conviction.

## II. *Validity of Informant's Testimony*

▮ Carcaise contends that his convictions for possession and distribution of cocaine were based on the uncorroborated testimony of a paid, contingent-reward informant.[10]

Conviction on testimony of a paid informant must be rejected when the informant is promised payment of a specified sum to convict a specific suspect. *Williamson v. United States,* 311 F.2d 441 (5th Cir.1962). In *Williamson,* the Fifth Circuit refused to sanction "a contingent fee agreement to produce evidence against particular named defendants as to crimes not yet commit-

ted." *Williamson v. United States* at 444.[11]

Carcaise asserts that the government's witness, Brock, was such a paid informant.[12] It should be made clear, however, that payment of expenses is not a contingent fee arrangement prohibited by *Williamson. See Henley v. United States,* 406 F.2d 705, 706 (5th Cir.1969).[13]

Carcaise focuses on informant Brock's belief that his (Brock's) sentences for prior convictions would be reduced in return for his efforts to assist the DEA in drug enforcement.[14] Carcaise asserts that the DEA unilaterally controlled the date that Brock would begin serving his sentence. He relies upon *United States v. Waterman,* 732 F.2d 1527 (8th Cir.1984) for the proposition that the government's promise to recommend reduction of an informant's sentence in exchange for the informant's participation in government investigations of criminal activities constitutes a contingent reward in violation of the defendant's right to due process and a fair trial.

---

**9.** The existence of an agreement to conspire may be demonstrated from circumstantial evidence (i.e., defendant's conduct, circumstances suggesting a plan or scheme, etc.). *United States v. Bascaro,* 742 F.2d 1335, 1359 (11th Cir.1984).

**10.** Appellant's brief articulates that the contingent-reward was two-fold:

First, the commencement of his [informant's] incarcerations for drug trafficking was postponed indefinitely at the request of the DEA. The DEA unilaterally controlled the date of the commencement of that sentence. Secondly, [the informant] ... expected his sentence to be reduced in exchange for his testimony.

**11.** *Williamson* is confined to the situation where a contingent fee is paid for the informant's investigation of a specific person. *United States v. Valle-Ferrer,* 739 F.2d 545, 546–47 (11th Cir. 1984); *United States v. Walker,* 720 F.2d 1527, 1539–40 (11th Cir.1983), *cert. denied, Gustin v. United States,* — U.S. —, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984).

**12.** Brock received approximately $8,000 from the DEA for reimbursement of expenses over a period of 18 months.

**13.** Carcaise appears to argue that the $8,000 payment to the government informant was ex-

cessive. In *United States v. Garcia,* 528 F.2d 580, 586–87 (5th Cir.), *cert. denied,* 429 U.S. 898, 92 S.Ct. 262, 50 L.Ed.2d 182 (1976), a government witness received $31,675.75 over an 18 month period. The Fifth Circuit closely scrutinized the payment to determine if it established a contingent reward. There was no evidence that the informant was instructed to avoid entrapment, nor was there evidence of an attempt to make a case against a specified suspect. The court held that mere payment, coupled with corroborating evidence, was an insufficient basis upon which to overturn the defendants' conviction. Based on the reasoning in *Garcia,* we conclude that the trial court could find that the payment of $8,000 over an 18 month period is not an excessive payment of expenses and does not constitute a contingent fee reward.

**14.** A federal and state court had earlier convicted Brock of conspiracy to sell marijuana. The federal district court sentenced him to serve seven years. Brock had not yet begun serving his sentence at the time of Carcaise's trial. Brock's attorney was expected to seek mitigation of the seven year sentence. The state court sentenced Brock on two counts of conspiracy, for a total of four years, to run concurrently with his federal sentence.

■ We need not determine whether this court would follow *Waterman* because the decision is distinguishable from the present case. The *Waterman* court had before it evidence of an oral agreement substantiated by written evidence outlining the essence of an agreement between the government and its confidential witness to reduce the informant's prison sentence in exchange for his testimony against other individuals.[15] Carcaise has not been able to produce evidence of any such agreement in the case before us.[16]

The lack of evidence of any agreement between the government and its informant, coupled with no basis for finding that a contingent reward existed, necessarily leads us to affirm the district court's decision that Brock was not a *Williamson* contingent reward witness.[17] The particular mind set of Brock—that he thought he might receive favorable consideration from the government—is, without more, insufficient to establish that he was a witness who behaved as he did because of a contingent reward.

### III. *Merger of Offenses*

Carcaise appeals from the imposition of consecutive sentences as a result of his conviction for two separate counts of possession with intent to distribute diazepam and his actual distribution of diazepam. He also contests the concurrent sentences imposed for his convictions involving possession with intent to distribute cocaine and for the actual distribution of cocaine. He maintains that the convictions for possession with intent to distribute and distribution merge into a single offense, and that multiple punishment for this single act violates the constitutional prohibition against double jeopardy. Both offenses were violations of 21 U.S.C. § 841(a)(1) which provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance....

■ Our determination of whether two separate offenses have merged into a single offense is made in light of the "different evidence" test. Under this test, "convictions for separate offenses arising from a single fact pattern are upheld if each statute proscribing the conduct requires proof of different facts and different elements as to each separate offense." *United States v. Hill*, 500 F.2d 733, 740 (5th Cir.1974), *cert. denied*, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975).[18] Where evidence of the sale of a controlled substance is the only evidence to support a possession charge, the offenses of possession with intent to distribute a controlled substance and actual distribution of the same substance have merged into a single offense for the purposes of limiting the sentencing to one offense. *United States v. Hernandez*, 591 F.2d 1019, 1022 (5th Cir.1979). However, where there is separate evidence of the two offenses, the offenses have not merged. *United States v. Berkowitz*, 662 F.2d 1127, 1141 (5th Cir. Unit B 1981); *United States v. Foundas*, 610 F.2d 298, 301–02 (5th Cir.1980).

■ As to sentences involving Carcaise's possession with intent to distribute diazepam and the actual distribution of dia-

---

**15.** The agreement was evinced by letters exchanged between the defendant and the government. *United States v. Waterman, supra*, at 1529, n. 1 and 2.

**16.** Brock, as well as DEA agents, testified that no one from the government promised to make a recommendation to mitigate Brock's sentence for his prior conspiracy convictions.

**17.** In addition, the record contains testimony by two DEA agents corroborating Brock's testimony as to the cocaine transaction with Carcaise.

It is obvious that the credibility of Brock's testimony was to be determined by the jury as factfinder who heard all of the testimony about the arrangements between DEA agents and the informant.

**18.** The Fifth Circuit definition of the "different evidence" test takes its lead from the Supreme Court's decision in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

zepam, there is an abundance of evidence to show that Carcaise possessed diazepam prior to distributing it.[19] Carcaise admitted that he had diazepam in a warehouse prior to distributing it on March 22 and March 25, 1983. Our facts closely parallel those found in *United States v. Foundas, supra,* at 302, where the defendant admitted to a DEA agent that she had cocaine and later produced the cocaine. The Fifth Circuit held that the "possession in this case was separate from the actual act of distribution." *Foundas* at 302. Viewing the evidence in the light most favorable to the government, we affirm the district court's consecutive sentences for possession and distribution of diazepam on the basis that these offenses were two separate offenses.

■ As to the possession with intent to distribute and the distribution of cocaine, appellant also relies upon the *Hernandez* merger doctrine.[20] Our prior analysis is also applicable to the sentences imposed for the cocaine convictions. Taking the facts in the light most favorable to the government, we affirm the sentences imposed for the cocaine convictions because there was evidence which a jury could credit showing that Carcaise independently possessed cocaine with the intent to distribute it.[21]

19. The trial record shows numerous instances where Carcaise stated that he had diazepam in stock. *See* note 6, *supra.*

20. Carcaise also urges that the small amount of cocaine he distributed (i.e., one-third gram) is such a minuscule amount that he could not have possessed this amount with intent to distribute it. At most Carcaise argues that this was simple possession under 21 U.S.C. § 844(a) which is a lesser included offense of possession with intent to distribute under 21 U.S.C. § 841(a)(1). *See, United States v. Howard,* 507 F.2d 559 (8th Cir.1974).

21. The record provides that the cocaine given to the government's witness was a sample for future purchases of cocaine.

22. Carcaise relies on the decision in *United States v. Tebha,* 578 F.Supp. 1398, 1399 (N.D. Cal.1984) which held that the imposition of special parole terms is a violation of due process on the basis that it does not fix a maximum penalty if the special parole order is disobeyed. Judge Wyzanski also held that the legislation

## IV. *Imposition of Special Parole Terms*

■ Carcaise's final contention is that the district court's imposition of special parole terms for each conviction—except the conspiracy conviction—violates the Fifth Amendment because the statute fails to provide him with notice of the maximum prison term if he violates the special parole order. Carcaise asserts that the statute violates the separation of powers doctrine because it gives the courts unrestricted power to determine the sanction for violation of a term of special parole.[22] The federal statutes in question provide for mandatory special parole terms.[23]

We reject Carcaise's contention that the statutory imposition of special parole terms is a violation either of due process or separation of powers.[24] Specific sanctions for violation of a special parole term are provided for in 21 U.S.C. § 841(c). This section allows for revocation of a special parole term when the special parole term is violated. The terms of imprisonment shall be increased "by the period of the special parole term and the resulting term of imprisonment shall not be diminished by the time which was spent on parole." *Supra.*[25]

violates the principle of separation of powers. The Third Circuit, however, found no such violation in § 841 special parole terms. *United States v. Walden,* 578 F.2d 966 (3rd Cir.1978), *cert. denied,* 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979). *See* fn. 24, *infra.*

23. 21 U.S.C. § 841(b)(1)(A) (cocaine convictions); 21 U.S.C. § 841(b)(2) (diazepam convictions).

24. *United States v. Counts,* 691 F.2d 348, 349 (7th Cir.1982): Imposition of a sentence under § 841(b)(1)(A), which specifically provides for a special parole term in addition to a term of imprisonment, does not amount to multiple punishment in violation of the Fifth Amendment.

25. The *Tebha* decision has been rejected by four district courts. *See, United States v. Davi,* 588 F.Supp. 91 (E.D.N.Y.1984) (Congress provided a "specific sanction for violation of a special parole term."); *United States v. Lockley,* 590 F.Supp. 1215, 1217 (N.D.Ga.1984) (special parole terms do not violate Fifth Amendment's

Imposition of a special parole term does not violate the constitutional doctrine of separation of powers. The legislature may authorize the judiciary to use discretion in imposing these sentences.[26]

AFFIRMED.

right to due process or the constitutional principle of due process); *Ugland v. United States,* 596 F.Supp. 156 (D.N.J.1984) (statute authorizing imposition of special parole term is not an unconstitutional delegation of legislative power to the judiciary and does not violate due process); and *United States v. Hollins,* 599 F.Supp. 311 (D.D.C.1984) (special parole term does not violate separation of powers doctrine or the defendant's right to due process).

**26.** *See United States v. Lockley, supra.*