544 So.2d 1089 (1989)
David Stanley ROWELL, Appellant,
v.
STATE of Florida, Appellee.
No. 88-1287.
District Court of Appeal of Florida, First District.
June 9, 1989.
*1090 Daniel A. McKeever, Jr., Live Oak, for appellant.
Robert A. Butterworth, Atty. Gen., Carolyn J. Mosley, Asst. Atty. Gen., for appellee.
WENTWORTH, Judge.
Appellant seeks review of his conviction of racketeering, conspiracy to traffic in excess of 100 pounds of cannabis, trafficking in excess of 100 pounds of cannabis, possession of cocaine, and manufacturing cannabis, and his sentences of three concurrent terms of nine years incarceration followed by ten years probation, a $25,000 fine, two concurrent terms of five years probation and a $5,000 fine, with the five year probationary terms to run consecutively to the other sentences. He alleges the trial court erred in denying his motion *1091 to suppress evidence seized pursuant to a search warrant on grounds that there was insufficient probable cause for issuance of the warrant, that the trial court erred in failing to instruct the jury as to "objective" entrapment, and that the trial court erred in denying his motions for mistrial on grounds of prosecutorial misconduct. We affirm, finding sufficient probable cause for issuance of the search warrant under the totality of circumstances test, no evidentiary basis for a jury instruction as to objective entrapment and no support in the record for appellant's contentions of prosecutorial misconduct.
Appellant, his wife, and two other coconspirators were charged by information on August 26, 1987 with racketeering, conspiracy to commit racketeering, conspiracy to traffic in excess of 100 pounds of cannabis, trafficking in cannabis, possession of cocaine and manufacturing cannabis. The charges arose out of an August 16, 1987 execution of a search warrant at appellant's residence, and subsequent seizure of 540 pounds of cannabis, as well as items related to the production and processing of cannabis and the use of cocaine, from a greenhouse and mobile home on appellant's property. In a probable cause affidavit for issuance of a search warrant drafted on behalf of Suwannee County Sheriff Robert Leonard, Leonard alleged that he had probable cause to believe that the dwelling of appellant and his wife contained marijuana plants and items related to the production and cultivation of marijuana based on a tip he received in June 1987 from an Orlando Drug Enforcement Administration agent. Leonard alleged that the agent told him there was a "Green House" in Suwannee County located west of Live Oak in a new subdivision called "something like Golden Acres" where marijuana was being grown. Leonard alleged that he drove to the area described by the agent and found a subdivision called Golden Glenn. Leonard alleged that he received a second tip through a state attorney's office investigator, Al Williams, who had received information from a Florida highway patrolman and part-time insurance adjuster, Sgt. Dawson, regarding suspicious activities at the location in Golden Glenn where the "greenhouse" was located. Dawson, working in his capacity as an insurance adjuster, had been on the property on insurance business and had seen a locked greenhouse with no windows. Dawson and a pilot flew over the property and took aerial photographs on June 29, 1987. Dawson and Williams then flew over the property again in July 1987. During both flyovers, occupants of a mobile home located immediately adjacent to the greenhouse were observed watching the plane. Leonard alleged that on August 16, 1987 he received an anonymous phone call from an individual who stated that he would provide information regarding the location of a greenhouse full of marijuana in exchange for the release of a person held in jail on DUI charges whose father was dying of cancer. Leonard alleged in the affidavit that the caller stated that he had been to the property and had seen a greenhouse full of marijuana that he believed was about to be harvested. The caller described the greenhouse as located west of town off Newbern Road, past Falmouth Road and a green colored house, taking a right off Newbern Road and proceeding north to a locked gate at the end of the road. Leonard alleged that this property was the same as depicted in the aerial photos taken by Williams and the same property as described by the DEA agent in June 1987. On these facts, a search warrant allowing a search of the premises and curtilage was issued, and the search was conducted.
At trial the state dropped Count II. Ann Rowell, appellant's wife, who testified against him as part of a plea bargain, stated that Leonard in June or July 1987 had entered the property disguised as an electric company meter reader. Leonard testified that he never entered appellant's property prior to execution of the search warrant, and did not direct anyone else to enter the property. Leonard testified that appellant informed him during the execution of the warrant that the anonymous phone tip Leonard received was from an individual who had burglarized the greenhouse and stolen marijuana from appellant.
*1092 At trial, appellant filed a motion with the court which included a request for a jury instruction on "objective" entrapment. The state opposed the request on grounds that the state did nothing to induce appellant to commit the crime, that objective entrapment is a matter of law for the judge to decide, and that the issue of improper conduct by state officials was litigated in a pretrial motion to suppress and found to be proper. The trial court denied the request for the instruction. During opening statement, the prosecutor referred to pictures seized during the search which depicted appellant standing in marijuana grown in the woods and another greenhouse. Defense counsel moved for a mistrial on grounds that the prosecutor referred to similar crimes of unknown origin having no relevancy to the instant case. The trial court denied appellant's motion. At the close of the prosecutor's opening statement, he stated that "we are confident at the close of the presentation of the evidence, you will be satisfied beyond a reasonable doubt, that this defendant is guilty of the crimes he stands charged with." Defense counsel moved for a mistrial based on the prosecutor's statement of his personal belief about the evidence. The trial court denied the motion. At trial, Leonard testified that several photographs were seized from a photo album found in the mobile home. Defense counsel objected to the admissibility of the photographs and moved for a mistrial on grounds that the owner of the photo album from which the photographs were taken was unidentified. The court sustained the objection to the admission of the photos in evidence, but ruled they could be marked for identification. The state thereafter showed several of the photos to the coconspirators, each of whom denied knowledge of the photos. Following the state's efforts to move the photos into evidence again, the court sustained the defense's objection to their admission, but denied the defense motion for mistrial based on the state's use of the photos. Appellant did not testify at trial. The jury returned a verdict of guilty on the remaining charges. A motion for new trial was filed, and denied. Appellant was sentenced to concurrent terms of 9 years incarceration followed by 10 years probation on Counts I, III and IV, with a $25,000 fine on Count III, concurrent terms of 5 years probation and a $5,000 fine on Counts V and VI, to run consecutively to the sentences on Counts I, III and IV.
The standard for determining the sufficiency of probable cause for issuance of a search warrant based on information from an informant is the "totality of circumstances test." Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Although Gates, supra, abandoned the two-prong tesst of veracity and basis of knowledge set forth in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. U.S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), those two factors are still circumstances to be considered among the totality of circumstances surrounding the issuance of the warrant. Blue v. State, 441 So.2d 165 (Fla.3d DCA 1983). The role of the reviewing court is to determine "whether the evidence viewed as a whole provided a `substantial basis' for the magistrate's finding of probable cause." Massachusetts v. Upton, 466 U.S. 727, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721, 727 (1984).
We find under the totality of circumstances test that there was sufficient probable cause for issuance of the search warrant. Although the basis of knowledge of the first informant is unknown, the warrant alleges that the second and third informants obtained their knowledge firsthand. The element of veracity of the second and third informants was at least partially supplied by their motives. Dawson, the part-time insurance adjuster, was also a highway patrolman. The third anonymous informant offered information in exchange for the release of a prisoner at the jail. Sheriff Leonard corroborated some of the information given to him by the first informant by driving to the location described by that informant. The information given by the first informant was corroborated by the second and third tips, and by the two flyovers by law enforcement personnel. Appellant argues that illegal governmental *1093 activity by Sgt. Dawson, Sheriff Leonard, the pilot who conducted the flyovers, and the third informant/burglar, renders the search warrant invalid. We do not find that Sgt. Dawson trespassed onto appellant's property, but rather was on the premises at appellant's property, but rather was on the premises at appellant's request when he observed the windowless locked greenhouse. Sheriff Leonard testified at trial that he did not trespass onto appellant's property and did not direct anyone else to illegally enter the property.
The two flyovers were lawful police activity under recent case law. In California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986), the court held that a warrantless aerial observance of an individual's fenced-in backyard did not violate the fourth amendment. In that case police in a fixed wing aircraft flew over the defendant's house at an altitude of 1,000 feet, within navigable airspace, and from that distance observed marijuana plants growing in the defendant's backyard. In this case, Williams and Dawson flew over appellant's backyard in a fixed wing aircraft at an undisclosed altitude. Appellant failed to elicit testimony at trial as to whether Dawson and Williams were unable to observe the greenhouse and its contents with the naked eye. Aerial photos taken during the flyovers were attached to the affidavit of probable cause for issuance of the warrant, but were not made part of the record on appeal. Appellant relies on Riley v. State, 511 So.2d 282 (Fla. 1987), in which the court found that a helicopter circling and hovering at 400 feet over the defendant's property to look through an opening in their roof was not permissible air surveillance. The court in Riley noted that aerial observation of curtilage was limited under Ciraolo, supra, to "the permissible observation to the `naked eye' from `navigable air space' at an `altitude of 1,000' in a `physically non-intrusive manner.'" Riley at 287. Appellant's burden was to demonstrate the illegality of the search, since it was conducted pursuant to a warrant. State v. Bell, 417 So.2d 822 (Fla. 4th DCA 1982). In this case appellant failed to offer proof that the aerial observations of the greenhouse from the fixed wing aircraft were conducted in an obtrusive manner or at an impermissible altitude, or that the observations could not have been made by the naked eye. Testimony at trial indicated that Sheriff Leonard did not learn that the third informant had obtained his information during a burglary of appellant's property until appellant so informed him during execution of the search warrant. Under these circumstances, and limiting our review to appellant's specific arguments on this point, we find the evidence supports a finding of probable cause for issuance of the warrant.
Under Florida law the threshold objective entrapment test is a matter of law for the court to decide. Cruz v. State, 465 So.2d 516 (Fla. 1985). The court in Cruz further held that entrapment has not occurred as a matter of law where police activity (1) has as its end the interruption of a specific ongoing criminal activity, and (2) utilizes means reasonably tailored to apprehend those involved in the ongoing criminal activity. The trial court's denial in this case of appellant's requested instruction on objective entrapment was proper not only because the issue here was one to be determined as a matter of law, but also because the evidence clearly showed the police activity was designed to interrupt ongoing criminal activity by appellant, rather than to ensnare or induce the commission of criminal activity.
We find no merit in appellant's argument regarding governmental misconduct amounting to entrapment in the use of the information supplied by the third informant, who offered to exchange information about the location of the greenhouse for release of an individual from jail. These circumstances involving the third informant are not analogous to a contingent plea agreement arrangement. See State v. Glosson, 462 So.2d 1082 (Fla. 1985); United States v. Waterman, 732 F.2d 1527 (8th Cir.1984). There was no evidence that the information supplied by the third informant was obtained by way of a prearranged deal, and the unknown informant did not provide unverifiable testimony at trial.
*1094 We find that appellant's arguments with regard to prosecutorial misconduct at trial are without merit. As to the photographs shown to various witnesses at trial, after the trial court ruled that the photographs were not admissible in evidence on grounds that the state had failed to prove their ownership, the state did not again mention the photographs and they were never viewed by the jury. A review of the prosecutor's opening statement does not support appellant's contention that the prosecutor improperly was permitted to state his personal opinion about the evidence. The record shows that the prosecutor's characterization of the sheriff, assistant state attorney, and highway patrolman as "terrible" during his closing argument was in response to defense counsel's arguments that the three individuals had engaged in illegal activity in prosecuting the defendant.
The order is affirmed.
BOOTH, J., concurs.
ERVIN, J., specially concurs with written opinion.
ERVIN, Judge, Specially Concurring.
I concur in all aspects of the majority's opinion; however, I would like to emphasize the highly suspicious appearance of the greenhouse located on appellant's property in which the marijuana was grown. The greenhouse was described as having no windows  it had solid walls  and as being completely locked. In addition to the written description of the greenhouse contained in the affidavit supporting the issuance of the search warrant, photographs of the structure were also attached to the affidavit. In short, when the judge made his probable cause determination, based upon the totality of all the circumstances, he had before him evidence particularly disclosing that the greenhouse in question was not a typical greenhouse used for the growing of plants.
In determining probable cause under the totality-of-the-circumstances test, the examining magistrate must be mindful that "probable cause requires only a probability or substantial chance of criminal activity... . In making a determination of probable cause the relevant inquiry is not whether a particular conduct is `innocent' or `guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." Illinois v. Gates, 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527, 552 n. 13 (1983) (emphasis added). Considering the high degree of suspicion that attached in this case, i.e., the most unusual appearance of the greenhouse, I agree that the record supports the lower court's finding of probable cause.